**Delores LEWIS, Plaintiff,**

v.

**Claude S. BRINEGAR, Secretary of Department of Transportation, and Missouri State Highway Commission, Defendants.**

**No. 73 CV 201–W–2.**

United States District Court,
W. D. Missouri, W. D.
March 20, 1974.

Michael J. Thompson, of the Legal Aid and Defender Society of Greater Kansas City, Kansas City, Mo., for plaintiff.

Vernon A. Poschel, Asst. U. S. Atty., Kansas City, Mo., Earl H. Schrader, Jr., and James R. Sandifar, Kansas City Mo., Asst. Counsel for Mo. State Highway Commission, for defendants.

MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

COLLINSON, District Judge.

This action is before the Court on motions for summary judgment filed by all the parties. Since there are no material facts in dispute, the action is in a posture for disposition on the pending motions.[1] Defendants' motions for summary judgment will be granted.

This action concerns the relocation assistance provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (the Act), 42 U.S.C. §§ 4601–4655 (1970). A brief discussion of the Act and the federal and state regulations promulgated to implement the Act is necessary. Section 4622 of the Act provides for relocation benefits, including moving expense and dislocation allowances:

(a) *General Provision.* Whenever the aquisition of real property for a program or project undertaken by a Federal agency in any State will result in the displacement of any person on or after January 2, 1971, the head of such agency shall make a payment to any displaced person, upon proper application as approved by such agency head, for—

(1) actual reasonable expenses in moving himself, his family . . . or other personal property. . . .

(b) *Displacement from dwelling; election of payments: moving expense and dislocation allowance.* Any displaced person eligible for payments under subsection (a) of this section who is displaced from a dwelling and who elects to accept the payments authorized by this subsection in lieu of the payments authorized by subsection (a) of this section may receive a moving expense allowance, determined according to a schedule established by the head of the Federal agency, not to exceed $300; and a dislocation allowance of $200.

Section 4601(6) of the Act defines "displaced person":

As used in this chapter—

. . . . . .

(6) The term "displaced person" means any person who, on or after January 2, 1971, moves from real property, or moved his personal property from real property, as a result of the acquisition of such real property,

---

1. The Court directed plaintiff to file a statement of the facts she proposed to prove at trial. Defendants were directed to admit or deny those facts.

in whole or in part, or as the result of the written order of the acquiring agency to vacate real property, for a program or project undertaken by a Federal agency, or with Federal financial assistance; . . . .

The moving expense and dislocation allowances provisions of subsection 4622(b) are made applicable to federally assisted state projects by section 4630 of the Act. Subsection 4633(c) authorizes agency heads to prescribe regulations necessary or appropriate to carry out the Act.

Pursuant to the authority granted by subsection 4633(c), the Secretary of Transportation (Secretary) promulgated 49 C.F.R. § 25.11 (1973) establishing eligibility requirements for section 4622 relocation benefits. Subsection 25.11(d) provides the eligibility requirement which is the subject of this action:[2]

A person, other than the former owner or tenant, who enters into rental occupancy of real property after its ownership passes to the agency concerned, does not qualify as a displaced person for the purposes of this part.

The Secretary implemented subsection 4622(b) of the Act by providing for moving expense and dislocation allowances in 49 C.F.R. § 25.155 (1973) for displaced persons. 49 C.F.R. § 25.-57(a)(1) (1973) requires that federally assisted state projects comply with section 25.155, *inter alia*. In addition, the Secretary delegated his regulatory authority under subsection 4633(c) to various federal agencies and administrations, including the Federal Highway Administration (FHWA). 49 C.F.R. §§ 25.7 and 25.9 (1973).

Pursuant to this authority, the FHWA issued Instructional Memorandum 80–1–71 (Memorandum) on April 30, 1971.[3] Paragraph 4(c) of the Memorandum defines "displaced person":

A displaced person is any person who

(1) is in occupancy at the initiation of negotiations for the acquisition of the real property in whole or in part. . . .

Paragraph 4(d) defines "initiation of negotiations":

The term "initiation of negotiations" for a parcel means the date the acquiring agency makes the first personal contact with the owner of the parcel or property to be acquired for a Federal or Federal-aid project or his designated representative where price is discussed.

Paragraph 17(a) carries forward the ¶ 4(c) definition of "displaced person" with regard to moving expense payments allowable under subsection 4622(a) of the Act and 49 C.F.R. §§ 25.11 to -.133 (1973):

(1) Any individual, family, business or farm operator is eligible to receive payment for the reasonable expenses of moving his personal property when

(a) he is in occupancy at the initiation of negotiations for the acquisition of the real property in whole or in part. . . .

Paragraph 18 implements the moving expense and dislocation allowances allowable under subsection 4622(b) of the Act and 49 C.F.R. §§ 25.151 to -.161 (1973). Paragraph 18 provides that a displaced person eligible under paragraph 17(a)(1) of the Memorandum is eligible for the moving expense and dislocation allowances. In short, "occupancy at the initiation of negotiations" is a critical qualification requirement for subsection 4622(b) moving expense and dislocation allowances.

---

2. The parties have focused their attention on 49 C.F.R. § 25.11(e) (1973). Under the facts of this action, however, the Court must conclude that plaintiff's application for subsection 4622(b) allowances was denied under 49 C.F.R. § 25.11(d) (1973).

3. For some reason not known to this Court, plaintiff did not join the FHWA as a party defendant.

The FHWA's Memorandum was implemented by the Missouri State Highway Commission (Commission) in its Relocation Handbook, Chapter VII: Relocation Assistance Program (Handbook). Section 8–1.3 of the Handbook provides:

A "displaced person" is any person who

(1) is in occupancy at the initiation of negotiations for the acquisition of the real property in whole or in part.

. . .

This definition is applied in section 8–8 of the Handbook which implements subsection 4622(b) of the Act, 49 C.F.R. §§ 25.151 to -.161 (1973), and Memorandum ¶ 18. In short, in order to qualify for subsection 4622(b) moving expense and dislocation allowances in a federally assisted Commission project, one must have been "in occupancy at the initiation of negotiations." This requirement, which runs throughout the entire federal and state regulatory scheme, is challenged by plaintiff's action.

The material facts have been admitted. In 1971, the Commission was involved in the purchase of real property in Kansas City, Missouri, in connection with construction of a primary Federal-Aid highway project known as the South-Midtown Freeway, Project QU–71–4 15(RA). On August 3, 1971, the Commission commenced negotiations for the purchase of the property located at 3011 Euclid. The property was conveyed to the State of Missouri through the Commission by a warranty deed executed August 4, 1971. The deed was recorded October 8, 1971. Acquisition of the property was financed by the Commission and the FHWA. On September 8, 1971, plaintiff and her family moved into the dwelling at 3011 Euclid with knowledge that the property had been or would be conveyed to the Commission.[4] On January 28, 1972, the Commission served plaintiff with a notice to vacate the dwelling.

If eligible for subsection 4622(b) allowances, plaintiff would be entitled to a moving expense allowance of $300 and a dislocation allowance of $200. On August 28, 1972, plaintiff filed a claim for subsection 4622(b) allowances with the Commission. The claim was rejected on September 19 because plaintiff had entered into occupancy of the dwelling at 3011 Euclid after negotiations had begun. Plaintiff appealed. Following a hearing, the Commission's Appeal Board issued a final order February 5, 1973, sustaining the denial of subsection 4622(b) allowances.

Plaintiff contends that 49 C.F.R. § 25.11(d) (1973) and the conforming FHWA and Commission regulations contravene subsections 4601(6) and 4622(b) of the Act. Before addressing this contention, the Court will consider the jurisdictional questions raised by the defendants.

■ The Secretary suggests that the Court lacks jurisdiction to review the promulgation of 49 C.F.R. § 25.11(d) (1973). This suggestion is erroneous. It is now settled that federal courts may review final federal agency action under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706 (1970), unless review is precluded by statute or the agency action is committed to agency discretion by law, 5 U.S.C. § 701(a)(1) and (2) (1970). Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Abbott Laboratories v. Gardner, 387 U.S. 136, 140–141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Indeed, this Court has already expressed its opinion by way of dictum that federal agency action under title II of the Act, 42 U.S.C. §§ 4621–4638 (1970), is subject to review under the APA. Barnhart v. Brinegar, 362 F.Supp. 464, 471 (W.D.Mo.1973). We now so hold. See Hanley v. Volpe, 305 F.Supp. 977, 980 (E.D.Wis.1969). Since review is not precluded by statute and the agency ac-

---

4. Plaintiff admitted her knowledge in her "Additional Statement of Facts" filed March 4, 1974. See n. 1, *supra*.

tion in question is not committed to agency discretion, the Court has jurisdiction to review the Secretary's action in promulgating 49 C.F.R. § 25.11(d) (1973).

■ The Commission also questions the Court's jurisdiction, suggesting that the Court lacks jurisdiction to review the Commission's issuance of Handbook §§ 8–1.3(c) and 8–8. First, the Commission claims sovereign immunity. This claim is ill-founded. Mo.Rev.Stat. § 226.100 (1969) provides that the Commission "may sue and be sued." This constitutes a "continuing waiver of sovereign immunity." V. S. DiCarlo Const. Co. v. State of Missouri, 485 S.W.2d 52, 56 (Mo.1972). The Commission has suggested that section 226.100 waives immunity only with respect to actions in the Circuit Court of Cole County, Missouri. The statute does not so limit the waiver and the Court is not disposed to read such a limitation into the statute when the Missouri legislature did not include it. Furthermore, the Eleventh Amendment to the Constitution does not bar this action. "[I]t is well established that a State may consent to federal suit and submit to the exercise of federal jurisdiction over it." Employees v. Missouri Public Health Dept., 411 U.S. 279, 294, 93 S.Ct. 1614, 1623, 36 L.Ed.2d 251 (1973) (Marshall, J., concurring). Section 226.100 constitutes such consent.

■ Secondly, the Commission suggests that there is no independent basis for federal jurisdiction over plaintiff's claim against the Commission. Assuming *arguendo* that this is true, dismissal of plaintiff's claim is not required. Even though plaintiff's claim against the Commission presents a federal question, jurisdiction under 28 U.S.C. § 1331 (1970) cannot be invoked because the requisite amount is not in controversy. For that reason, this Court does not have original jurisdiction and the claim must be considered a state claim. But it is a state claim only in the sense that a state court alone would have independent jurisdiction to hear the federal question.

The question presented by the Commission's contention is whether this Court has pendent jurisdiction over plaintiff's claim against the Commission.

The authorities disagree whether pendent jurisdiction may be exercised over a state claim against a "pendent party," *i. e.* a party implicated in the litigation only with respect to the pendent state claim and not also with respect to any claim for which there is an independent basis of federal jurisdiction. Professor Wright unequivocally states:

> The pendent jurisdiction concept applies only where the same parties are involved on the state and federal claims. It does not permit bringing in an additional party to respond to a state claim on the ground that that claim is closely related to the federal claim against an existing party.

C. Wright, Federal Courts § 19, at 65 (2d ed. 1970) (footnotes omitted). This view is supported by Hymer v. Chai, 407 F.2d 136 (9th Cir. 1969). A number of federal courts in recent years have reached a contrary result relying on United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The *Gibbs* Court held that federal courts have the power to hear federal and state claims in one action if (1) the federal claim is sufficiently substantial to confer subject matter jurisdiction on the court, (2) the federal and state claims derive from a common nucleus of operative fact, and (3) plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding. 383 U.S. at 725, 86 S.Ct. at 1130. The *Gibbs* Court did reaffirm "that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims. . . ." 383 U.S. at 726, 86 S.Ct. at 1139. Although *Gibbs* did not involve the problem of a "pendent party," six courts of appeals have found *Gibbs* broad enough to allow jurisdiction over

a "pendent party." Almenares v. Wyman, 453 F.2d 1075, 1083 (2d Cir. 1971), cert. denied, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972); Leather's Best, Inc. v. S. S. Mormaclynx, 451 F.2d 800, 809–811 (2d Cir. 1971); Nelson v. Keefer, 451 F.2d 289, 291 & n. 4 (3rd Cir. 1971); Beautytuft, Inc. v. Factory Ins. Assoc., 431 F.2d 1122, 1128 (6th Cir. 1970); F. C. Stiles Contracting Co. v. Home Ins. Co., 431 F.2d 917, 919–920 (6th Cir. 1970); Hatridge v. Aetna Casualty & Surety Co., 415 F.2d 809, 816–817 (8th Cir. 1969); Stone v. Stone, 405 F.2d 94, 96–98 (4th Cir. 1968); Connecticut General Life Ins. Co. v. Craton, 405 F.2d 41, 48 (5th Cir. 1968); Jacobson v. Atlantic City Hospital, 392 F.2d 149, 155 (3rd Cir. 1968); Wilson v. American Chain & Cable Co., 364 F.2d 558, 564–565 (3rd Cir. 1966). The Supreme Court has recognized the problem of the "pendent party," but has declined to address it. Moor v. County of Alameda, 411 U.S. 693, 710–715, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

This Court must follow the decision of the United States Court of Appeals for the Eighth Circuit in Hatridge v. Aetna Casualty & Surety Co., *supra,* and we find the reasoning of the United States Court of Appeals for the Second Circuit in Leather's Best, Inc. v. S. S. Mormaclynx, *supra,* to be highly persuasive. In short, the doctrine of pendent jurisdiction is available with respect to plaintiff's claim against the Commission.[5]

This action satisfies the three requirements announced in *Gibbs.* First, plaintiff's claim against the Secretary is sufficiently substantial to confer subject matter jurisdiction on the Court. Secondly, the federal and state claims arise from a common nucleus of operative facts. Thirdly, plaintiff's claims are such that she would ordinarily be expected to try them all in one judicial proceeding. Furthermore, it cannot be doubted that judicial economy, convenience and fairness to the litigants will be subserved by an exercise of pendent

jurisdiction in this action. The fact that plaintiff's claim against the Commission presents a federal question also militates strongly in favor of exercising pendent jurisdiction.

Having disposed of defendants' jurisdictional questions, we now turn to the merits of the action. The standard to be applied in determining whether the Secretary exceeded the authority delegated to him by 42 U.S.C. § 4633(c) (1970) in promulgating 49 C.F.R. § 25.-11(d) (1973) is found in Mourning v. Family Publications Service, Inc., 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L. Ed.2d 318 (1973) (footnote omitted):

> Where the empowering provision of a statute states simply that the agency may "make . . . such rules and regulations as may be necessary to carry out the provisions of this Act," we have held that the validity of a regulation · promulgated thereunder will be sustained so long as it is "reasonably related to the purposes of the enabling legislation."

A more detailed statement of this standard is found in Review Committee v. Willey, 275 F.2d 264, 272 (8th Cir. 1960):

> It is well settled, of course, that administrative construction of an Act is entitled to great weight. . . . Regulations are to be sustained unless unreasonable and plainly inconsistent with the statute and they are not to be overruled except for weighty reasons. . . . This principle applies to regulations issued under the Act. . . . One claiming that a regulation is invalid has the heavy burden to "make its invalidity so manifest that the court has no choice except to hold that the Secretary has exceeded his authority and employed means that are not at all appropriate to the end specified in the act of Congress." . . . Regulations, however, cannot be arbitrary. They must have a basis in the statute and be within the authority granted the administrative agency. . . . [Citations omitted.]

---

5. Having reached this conclusion, it is not necessary to decide whether the Commission could have been joined under Rule 19, Fed. R.Civ.P.

The Court has carefully reviewed the legislative history of the Act. S.Rep.No. 91–488, 91st Cong., 1st Sess. (1969); H.R.Rep.No. 91–1656, 91st Cong., 2d Sess. (1970), 1970 U.S.Code Cong. & Ad.News 5850; 115 Cong.Rec. 31533–35 (1969); 116 Cong.Rec. 40163–72, 42132–40, 42506–07 (1970). The Court is especially mindful of Congress' statutory declaration of purpose:

> The purpose of this subchapter [42 U.S.C. §§ 4621–4638 (1970)] is to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of Federal and federally assisted programs in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole.

42 U.S.C. § 4621 (1970). The evident purpose of the relocation assistance provisions of the Act, including 42 U.S.C. § 4622(b) (1970), is to compensate and make economically whole those persons who are necessarily and unavoidably uprooted from their homes and businesses as a result of federal and federally assisted state projects undertaken for the public good.

■ 49 C.F.R. § 25.11(d) (1973) is related to this purpose in a negative fashion. The effect of the regulation is to disqualify for relocation benefits those persons who enter into rental occupancy of a dwelling after it has been acquired by a governmental agency for a public project. Such persons are neither necessarily nor unavoidably uprooted. Their ties to the dwelling, and probably to the neighborhood, are at best temporary.[6] To adopt plaintiff's reasoning would require the Court to hold that Congress intended to provide relocation benefits for all persons who enter into occupancy of a dwelling after acquisition and up to the time the governmental agency assumes actual possession of the property,[7] no matter how many persons that may be or how short their stay may be. Such a holding would encourage *new* occupancy of dwellings and areas already acquired for public projects. Congress did not intend such a result. Since section 25.11(d) insures that only those persons necessarily and unavoidably uprooted by public projects will receive the benefit of the relocation assistance provisions of the Act, the regulation is reasonably related to the purpose of the Act and is valid.

Since section 25.11(d) is valid, it should follow that the Commission's Handbook §§ 8–1.3(c) and 8–8 are valid also. The Court's ruling, however, must take into account one other problem: the Commission's regulations are substantially broader than section 25.11(d). This is so because the Commission's regulations are patterned after the FHWA's Memorandum ¶ 4(c) which is also considerably broader than section 25.11(d). Handbook § 8–1.3(c) and Memorandum ¶ 4(c) disqualify for relocation benefits those persons who were not in occupancy of real property at the initiation of negotiations for the acquisition of such property. This requirement is patterned after 49 C.F.R. § 25.11(e) (1973):

> A person who enters into occupancy of real property after the initiation of negotiations for that property or the issuance of a notice of intent to acquire that property by a given date, as the case may be, does not qualify as a displaced person for the purposes of this part.

Section 25.11(e) encompasses section 25.11(d); that is to say, both regulations provide a cut-off date for relocation benefits based on occupancy, but the date in section 25.11(e) is earlier than the date in section 25.11(d). For this reason, neither the Commission nor

---

6. That is especially true in this case since the plaintiff entered into occupancy of the dwelling at 3011 Euclid with the knowledge that it had been or would be conveyed to the State.

7. By its express terms, 49 C.F.R. § 25.11(d) (1973) does not apply to "the former owner or tenant."

the FHWA issued a regulation in the language of section 25.11(d).

█ Whether section 25.11(e) is valid is not a question presented by this action. Since section 25.11(d) is valid, Handbook §§ 8–1.3(c) and 8–8 are valid *to the extent that they implement* section 25.11(d). Furthermore, since plaintiff entered into occupancy of the dwelling at 3011 Euclid after its ownership passed to the State through the Commission, the Commission properly denied plaintiff's application for 42 U.S.C. § 4622(b) (1970) allowances under Handbook §§ 8–1.3(c) and 8–8 to the extent that those regulations implement 49 C.F.R. § 25.11(d) (1973).

For the reasons stated, it is

Ordered that plaintiff's motion for summary judgment be, and hereby is, denied; and it is

Ordered that defendants' respective motions for summary judgment be, and hereby are, granted.