### WILL–TEX PLASTICS MANUFACTURING, INC.
### v.
### The DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT et al.
### No. 72–153.

United States District Court,
E. D. Pennsylvania.
June 29, 1972.

---

Joseph R. Livesey, Kates, Livesey & Edelstein, Philadelphia, Pa., for plaintiff.

Walter S. Batty, Jr., Asst. U. S. Atty., Francis J. Moran, Redevelopment Authority of the City of Philadelphia, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

VANARTSDALEN, District Judge.

Plaintiff seeks injunctive relief to halt all redevelopment programs in the City of Philadelphia and all federal assistance for such projects until and unless plaintiff, a tenant in a property acquired by the Redevelopment Authority of the City of Philadelphia (hereafter called "RDA") is offered "just compensation" for machinery and equipment plaintiff placed on the premises, and is provided with "a written statement of and summary of the basis for the amount offered." [1] Plaintiff asserts entitlement to such relief pursuant to the "Uniform Relocation Assistance and Real Property Acquisition Policies Act", Public Law 91–646, January 2, 1971, 42 U.S.C.A. § 4601 through § 4653 inclusive (hereafter called the "Policies Act").

Defendant, Department of Housing and Urban Development (hereafter called "HUD") and RDA [2] have filed motions to dismiss the complaint pursuant to Federal Rules of Civil Procedure, Rule 12(b) (1)—lack of subject matter jurisdiction—and Rule 12(b)

---

1. See Complaint—prayer for relief.

2. RDA is not named in the caption as a party defendant, nor was it served as an entity. Paragraph 3 of the complaint refers to "defendant RDA", and RDA has filed pleadings. For purposes of this decision, RDA will be treated as if plaintiff had filed and served the complaint against RDA as a defendant.

(6)—failure to state a cause of action. Plaintiff has moved for a preliminary injunction.

Plaintiff contends that RDA "a local public agency"[3] that receives federal financial assistance from HUD condemned certain property in Philadelphia pursuant to its urban renewal plan; and that by reason of such condemnation and notice to vacate, plaintiff, a tenant of a portion of the premises, is entitled to compensation for machinery and equipment on the premises that cannot be removed. Plaintiff asserts that RDA and/or HUD have failed to comply with mandatory procedures set forth in the Policies Act, and that until there is such compliance, plaintiff is entitled to the relief sought.

■ Plaintiff asserts that RDA and/or HUD have failed to comply with three sections of the Policies Act as follows:[4]

1. Section 301(3). RDA has not provided plaintiff with a written statement of and summary of the basis for the amount established by RDA as just compensation for plaintiff.

2. Section 302. RDA has offered plaintiff no sum for plaintiff's improvements and machinery and equipment installed on the premises.

3. Section 301(6). RDA has refused to adjust the rent charged plaintiff "to reflect the fact that it terminated [plaintiff's] occupancy under its written lease and permitted it to remain solely upon a month to month basis."

Analysis of the Policies Act and its purposes is required. The Policies Act was adopted on January 2, 1971. Counsel have referred to no cases that have interpreted the Act. Some reference to the Legislative History may be helpful.

The Policies Act contains provisions for relocation assistance for displaced persons under Subchapter II. Plaintiff makes no allegation that defendants have failed to comply with any provisions of Subchapter II, nor does plaintiff claim entitlement to any relief under Subchapter II as a displaced person.[5]

Subchapter III, entitled "Uniform Real Property Acquisition Policy", concerns itself primarily with establishing uniform policies and guidelines that federal agencies, having powers of condemnation, are to utilize in all condemnations. Section 301 states in the preamble that "in order to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for the owners in the many Federal programs, and to promote public confidence in Federal land acquisition practices, heads of Federal agencies shall, to the greatest extent practicable, be guided by the following policies". Section 305 of the Policies Act makes the guidelines of Section 301 applicable to state agencies receiving federal assistance as to all acquisitions of real property *on or after January 2, 1971*. Section 305 requires that the head of the federal agency making the grant receive "satisfactory assurances from the State agency" that it will be guided, to the greatest extent practical under state law, by the same acquisition policies as set forth in Section 301.[6]

3. Paragraph 2 of the complaint. Under § 101(3) of the Policies Act such an agency is defined as a "State agency".

4. Paragraph 7 of the complaint.

5. Section 101(6) defines a "displaced person" as one who, "after January 2, 1971, moves from real property, or moves his personal property from real property . . . ." Plaintiff does not allege that it has moved or that it has removed any personal property at any time from the premises, and the complaint makes it apparent that plaintiff is still in possession of the premises with its personal property located thereon. Plaintiff is not a "displaced person" as defined in the Policies Act.

6. Pennsylvania amended its Eminent Domain Code to comply with the guidelines of the Policies Act—Act No. 169, December 29, 1971, P.L. ——; and Act No. 170, December 29, 1971, P.L. ——.

■ A reading of the various provisions of the Policies Act leads to the conclusion that the Policies Act did not intend to confer upon parties in the position of plaintiff any right to obtain any relief in the federal courts. Section 102 of the Policies Act provides that the policy guidelines set forth in Section 301 "create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation." Section 102 further provides that the Policies Act shall not create "in any condemnation proceedings brought under the power of eminent domain, any element of value or damage not in existence immediately prior to January 2, 1971."

The Legislative History as reported in House Report No. 91–1656, on Section 102 is worth noting:

"[T]he provisions of the uniform policy on land acquisition practices, in section 301, do not create any rights or liabilities in any person and do not affect the validity of any acquisition by purchase or condemnation.

"The committee has considered, but does not agree with, proposals which would make the benefits provided by the bill subject to judicial review. The committee agrees with the judgment of the Department of Justice, and others, who believe that this would add an unnecessary burden to the overcrowded courts. The primary purpose of the judicial review proposals is to give recognition to the principle that such benefits should be viewed as administrative payments to displaced persons. The committee believes that this objective can be achieved by the clear language of the bill which makes relocation payments and assistance, and the availability of suitable replacement housing for displaced persons, matters of congressional policy and makes agency heads responsible for faithful execution. Section 213(b) (3) of the bill provides an alternate to judicial review, by requiring the heads of Federal agencies to establish regulations and procedures that will assure any person aggrieved by a determination as to eligibility for a payment authorized by this act, or the amount of the payment, may have his application reviewed by the head of the Federal agency having authority over the project; or in the case of a program receiving Federal financial assistance, by the head of the State agency." U. S. Congressional Code and Adm.News, 1970, pp. 5854 and 5855.

Although plaintiff indirectly attempts to allege that there are no regulations promulgated under Section 213(b) (3) of the Policies Act,[7] judicial notice may be taken of the fact that such regulations have been promulgated.[8]

■ The complaint is vague as to when acquisition of the property took place.[9] The complaint avers in paragraph 5 that "RDA sought to condemn" by filing a declaration of taking in state court, docketed July Term, 1968. Ordinarily, the condemnation under state law becomes effective and title passes as of the time of filing a declaration of taking. Act of June 22, 1964, Pub.L. 84 § 402(a), 26 P.S. 1–402 (Pocket Parts). This would mean that the condemnation occurred in 1968. In any event, it appears undisputed that the acquisition of the real property by RDA occurred prior to the effective date of the Policies Act, January 2, 1971. As a tenant in possession, plaintiff conceivably could have some continuing rights under the Policies Act, even though the property was acquired prior to January 2, 1971, except that Section 305 expressly provides that the Section 301 guidelines become

---

7. Paragraph 10 of the complaint.

8. F.R. Docket 71–6693, effective May 13, 1971. Vol. 36, No. 93, pp. 8785–8798 Federal Register.

9. At oral argument, defense asserted that the premises were acquired by purchase on January 8, 1969, and such was averred in the answer. The Policies Act applies to land acquisitions whether by purchase or condemnation.

applicable as to state agencies only as to real property acquired on or after January 2, 1971. To the extent that plaintiff asserts failures to comply with Section 301 of the Policies Act, as set forth in the Complaint, paragraph 7(a)—failure to provide a written statement of and summary of the basis for the amount established by RDA as just compensation, and 7(c)—refusal to adjust rent charges "to reflect the fact that it terminated Will-Tex's occupancy under its written lease and permitted it to remain solely upon a month to month basis," no cause of action is stated because the acquisition of the real property occurred prior to January 2, 1971.[10]

Plaintiff has one additional alleged failure to comply with the Policies Act. Plaintiff asserts that it is entitled to compensation by reason of Section 302 of the Policies Act, and that RDA has offered it no compensation for its "improvements and machinery and equipment installed in its premises."[11] Again Section 305, which makes the provisions of Section 302 applicable to state agency acquisitions receiving federal financial assistance, provides only that it shall affect real property acquisitions occurring "on or after January 2, 1971." If, indeed, plaintiff as a tenant is entitled to any compensation by reason of its equipment and machinery being irremovable from the premises, the Policies Act does not afford this plaintiff any cause for relief in this court, the acquisition occurring prior to January 2, 1971.

■ It should be further noted that Section 302 of the Act permits compensation to a tenant for a building, structure or improvement only if "the owner of the land involved disclaims all interest in the improvements of the tenant."[12] There is no allegation in the complaint that the owner disclaimed any and all interest in the machinery and equipment which plaintiff claims. This requirement in the Policies Act is to assure that there will be no duplication of payments. It is particularly appropriate in the present case since plaintiff nowhere in the complaint asserts what are the terms or conditions of the lease, especially as to the right or obligation, if any, of the tenant to remove any of the alleged "improvements and machinery and equipment."

■ As to the failure to adjust the rental charge, aside from the fact that this requirement does not apply to acquisitions prior to January 2, 1971, as hereinbefore determined, the allegation is defective in stating a cause of action even if Section 301(6) would be applicable. Section 301(6) merely states that the amount of rent charged a short-term tenant, "shall not exceed the fair rental value of the property to a short-term occupier." Even if the complaint could be construed as indirectly averring that the plaintiff was changed from a long-term to a short-term lessee, it does not ipso facto follow that rents must be adjusted or changed, since the rent charged may still equal the fair rental value to a short-term lessee.[13] Plaintiff does not aver that the rent being charged exceeds the fair market value for a month to month lease.

■ The allegations of this complaint fail to state a cause of action cognizable in this court. This is not to indicate that plaintiff is without a remedy. If, in fact, as a tenant, plaintiff has an interest in the machinery and equipment that cannot be removed, under the eminent domain laws of Pennsylvania, it is entitled to compensation. Plaintiff conceded at oral argument that it has a full and complete remedy at law through

---

10. Defendants do not concede that there has been any failure to comply even if the Policies Act guidelines of Section 301 were fully applicable.

11. Paragraph 7(b) of the complaint.

12. Section 302(2) of the Policies Act.

13. Again, at oral argument it was represented that in fact the rents had been reduced, and plaintiff did not contest this representation. The rent reduction may have occurred after filing of the complaint.

state court condemnation proceedings. Plaintiff's reason for seeking this court's aid was to obtain its ultimate goal of a more expeditious and/or lucrative monetary settlement of its claim for damages. The Policies Act was not intended to be so utilized. The clear purpose of the Policies Act was to bring about uniform nationwide procedures in all public taking of lands by the federal government or by state agencies receiving federal financial assistance. It was contemplated by the Policies Act that state agency condemnations would still be adjudicated through state court condemnation proceedings following the procedures and rights set forth in the Policies Act.

 Plaintiff conceivably could argue that its interests in the premises have never been acquired by RDA by condemnation or otherwise, and that consequently the Policies Act would now be effective as to any such attempted acquisition. In such a situation, plaintiff's present position would be exactly the same as any other tenant who receives an eviction notice from a landlord who has acquired the reversionary interest from a prior owner-landlord. That would be a matter to be determined by state law and in state courts. Should RDA attempt to acquire plaintiff's interest, if any, in the premises in violation of the procedures set forth in the Policies Act, either as to Sections 301 or 302, this would likewise be in violation of state eminent domain procedures, and plaintiff would have complete protection through state courts. The Policies Act clearly did not intend to permit the federal courts to cut off all federal funding in such a situation.

Concluding, therefore, that plaintiff has failed to state a cause of action, the complaint will be dismissed. The motion for a preliminary injunction must likewise be denied. In any event, the preliminary injunction as sought by

plaintiff would have been inappropriate. Plaintiff is still in possession of the premises and there is no immediate and irreparable harm.[14] In addition, it is apparent that plaintiff in the final analysis seeks only monetary damages. Pennsylvania law expressly provides for detention damages for any delay in making payment. Injunctive relief of the type here sought is clearly inappropriate.

14. The motion for a preliminary injunction (unsigned by counsel), twice sets forth that plaintiff will suffer *irreputable* [sic] harm, but there is no allegation of immediate harm.