Abe **SEEHERMAN** and Pearl E.
Seeherman, his wife

v.

James T. **LYNN**, Secretary, U. S. Dept. of
Housing and Urban Development and
Leon E. Case, Jr., Individually and in his
official capacity as Executive Director,
Redevelopment Authority of the City of
Wilkes-Barre.

Civ. No. 74–993.

United States District Court,
M. D. Pennsylvania.

June 5, 1975.

Jerome L. Cohen, Wilkes-Barre, Pa., for plaintiffs.

S. John Cottone, U. S. Atty., Laurence M. Kelly, Asst. U. S. Atty., Scranton, Charles A. Shaffer, Wilkes-Barres, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, District Judge.

Plaintiffs are residents of Wilkes-Barre, Pennsylvania, who owned property which was acquired by the defendant Redevelopment Authority of the City of Wilkes-Barre pursuant to a federally-assisted urban renewal program in South Wilkes-Barre in July of 1973. In this suit, they challenge the legality of their being denied, in connection with that acquisition, an allowance for replacement housing pursuant to 42 U.S.C. § 4623, which is part of the Uniform Relocation Assistance Act (U.R.A.), 42 U.S.C. § 4601 *et seq.* Defendants are the Secretary of the United States Department of Housing and Urban Development (the federal defendant), and the Executive Director of the Redevelopment Authority of the City of Wilkes-Barre (the Authority). Presently pending are motions to dismiss for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted, filed by both defendants, and a motion for summary judgment filed by the federal defendant.

■ Bearing in mind that, in considering a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff and its material allegations are taken as true, *Jenkins v. McKeithen*, 395 U.S. 411, 421–422, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), the complaint alleges the following. Immediately prior to the flood disaster caused by Hurricane Agnes in June of 1972, plaintiffs owned a landsite in South Wilkes-Barre on which they were constructing a family home. The home was nearly completed and ready for occupancy when the flood struck on June 23, 1972 and destroyed the building. Thereafter, on July 6, 1973, pursuant to a federally-assisted urban renewal program begun in the wake of the disaster, the Authority purchased the plaintiffs' property on which the almost-completed home had been located. Although plaintiffs were paid a fair consideration for the purchase of their

property, they did not receive any additional funds for relocation assistance as authorized by 42 U.S.C. § 4623; the Authority informed them that they were not eligible to receive such relocation assistance, inasmuch as they had not occupied the home prior to its destruction by the flood in the summer of 1972 and hence did not qualify for relocation assistance under the United States Department of Housing and Urban Development's (HUD) constructive occupancy policy.

In the context of this case, the constructive occupancy policy provided[1] that all owners of property acquired pursuant to the aforementioned urban renewal project who occupied their homes on the day prior to the 1972 flood would be eligible to receive relocation assistance, even though they did not occupy their homes immediately prior to their acquisition by the Authority as required by the relocation assistance statute, 42 U.S.C. § 4623(a)(1). That statute provides in pertinent part: "In addition to payments otherwise authorized by this subchapter, the head of the Federal agency shall make an additional payment not in excess of $15,000 to any displaced person who is displaced from a dwelling actually *owned* and *occupied* by such displaced person for not less than one hundred and eighty days prior to the initiation of negotiations for the acquisition of the property." (emphasis supplied).

Plaintiffs argue that the defendants' refusal to pay them relocation assistance has violated their constitutional rights in two respects: (1) insofar as the constructive occupancy policy distinguishes between property owners who occupied their acquired homes immediately prior to the flood and plaintiffs, it violates plaintiffs' Fifth Amendment equal protection rights,[2] *United States Department of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); and (2) the constructive occupancy policy aside, the statutory requirement that a homeowner occupy his home prior to its acquisition in order to be eligible to receive Section 4623 benefits violates plaintiffs' Fifth Amendment due process rights, in that the occupancy requirement creates an impermissible irrebuttable presumption that all homeowners who do not occupy their homes immediately prior to their acquisition pursuant to an urban renewal program are not "displaced persons" within the meaning of the U.R.A., *United States Department of Agriculture v. Murry*, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973). In addition, plaintiffs contends that the defendant Authority, in reviewing their request for relocation benefits, did not act in accordance with the procedures specified in HUD regulations, in that it did not furnish them an impartial review. Plaintiffs seek a declaration that the constructive occupancy policy is unconstitutional, and an award of $15,000 in relocation benefits, together with the damages caused by the Authority's failure to provide them an impartial review.

The defendants advance two arguments in support of their motions to dismiss for lack of subject matter jurisdiction: (1) the U.R.A. creates no rights in favor of property owners enforceable in federal courts. *Will-Tex Plastics Manufacturing, Inc. v. Department of Housing and Urban Development*, 346 F.Supp. 654 (E.D.Pa.1972), *aff'd*, 478 F.2d 1399 (3d Cir. 1973); and (2) the complaint does not adequately set out a jurisdictional basis for this suit. In sup-

---

1. The policy does not appear to have been codified anywhere.

2. " '[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is "so unjustifiable as to be violative of due process." ' (citations omitted) . . . This Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514, n. 2 (1975) (opinion filed March 19, 1975).

port of the motion to dismiss for failure to state a claim and the motion for summary judgment it is urged that the challenged policy and statute are clearly constitutional and that the defendants are entitled to judgment as a matter of law. These arguments will be addressed *seriatim*.

■ The jurisdiction arguments can be disposed of summarily. The contention that the U.R.A. establishes no federal jurisdiction to enforce its provisions is based on cases that dealt with suits to force local redevelopment authorities and/or HUD to comply with the provisions of the U.R.A.[3] *Will-Tex Plastics Manufacturing, Inc. v. Department of Housing and Urban Development*, 346 F.Supp. 654 (E.D.Pa.1972), for example, was a suit to enjoin all redevelopment programs in the City of Philadelphia until the plaintiff received "just compensation" for its property in accordance with the provisions of the U.R.A. The case arose under the Act in that the plaintiff was seeking to enforce a specific provision of the statute with which the defendants had allegedly failed to comply. The Court held that the U.R.A. "did not intend to confer upon parties in the position of plaintiff any right to obtain any relief in the federal courts." *Id.*, at 658. This suit, by contrast, does not purport to arise under the U.R.A., but under the Constitution. It is not a claim that a policy and a statute have been erroneously administered by the defendants, but that a policy and a statute administered by the defendants are unconstitutional. The argument based on the *Will-Tex* line of cases, therefore, is unpersuasive. Furthermore, because this case depends directly on the construction of the Fifth Amendment of the Constitution, and the amount in controversy exceeds $10,000, there is clearly federal question jurisdiction under 28 U.S.C. § 1331, and thus the contention that the complaint does not adequately set out a jurisdictional basis is likewise groundless.

■ Turning to the merits, the plaintiffs argue first that the constructive occupancy policy violates equal protection because it is not rationally related to the U.R.A.'s purpose of providing assistance to persons displaced as a result of federally-assisted urban renewal programs. They contend that the policy is irrational because it precludes them from receiving Section 4623 benefits even though their receipt of such benefits would be as consistent with the statutory purpose of the U.R.A. as the receipt of those benefits by persons, included within the policy, i. e., persons who occupied their acquired homes immediately prior to the flood. Their theory is that because, absent the policy, no one in the flooded area would have received Section 4623 benefits, inasmuch as no one in that area occupied his home immediately prior to the Authority's acquisition of it because everyone had been displaced a year earlier by the flood, it is improper to discriminate against plaintiffs solely because they did not occupy their home immediately prior to the flood, when, absent the flood, they, just like everyone else in the flooded area, would have occupied their home immediately prior to the Authority's acquisition of it, inasmuch as they were about to move in when the flood struck. Plaintiffs' argument is an exercise in circularity and does not describe a violation of equal protection.

"Under traditional equal protection analysis, a . . . classification must be sustained if the classification itself is rationally related to a legitimate government interest." *United States Department of Agriculture v. Moreno*, 413 U.S. 528, 533, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1972). Applying that analysis to this case,[4] the constructive oc-

---

3. In addition to the *Will-Tex* case, see *Martinez v. Department of Housing and Urban Development*, 347 F.Supp. 903 (E.D.Pa.1972); and *Barnhart v. Brinegar*, 362 F.Supp. 464 (W.D.Mo.1973).

4. Plaintiffs do not dispute, and it is clear, that strict scrutiny is not applicable here.

cupancy policy must be sustained. To begin with, the purpose of the U.R.A., which no one disputes is legitimate, is clearly stated in 42 U.S.C. § 4621, which provides:

"The purpose of this subchapter is to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of Federal and federally-assisted programs in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole."

The term "displaced person" is defined in 42 U.S.C. § 4601(6) as "any person who . . . moves from real property . . . as a result of the acquisition of such real property . . . for a program or project undertaken by a Federal Agency or with Federal financial assistance . . . ." The more specific purpose of Section 4623, the provision of the U.R.A. at issue here, is to reimburse persons displaced from their homes for the cost of finding comparable replacement housing elsewhere. It authorizes the payment of benefits in addition to the purchase price of the dwelling acquired under the urban renewal program, specifically, the difference between that price and "the reasonable cost of a comparable replacement dwelling[,]" Section 4623(a)(1)(A), and the "increased interest costs which such person is required to pay for financing the acquisition of any such comparable replacement dwelling." Section 4623(a)(1)(B). It anticipates someone being displaced from actual living quarters.

It is clear that the constructive occupancy policy is rationally related to that purpose. While it represents an exception to the requirement of Section 4623(a)(1) that the owner occupy his home prior to its acquisition,[5] it nevertheless is limited to persons who were displaced by the flood and could not reoccupy their homes as a result of the urban renewal program. Its exclusion of persons in plaintiffs' class is clearly rationally related to the statutory purpose of assisting *displaced* persons, inasmuch as plaintiffs were never displaced from the property at issue here, never having occupied it in the first place. (In that regard, plaintiffs are in much the same position as owners of commercial, nonresidency premises which were destroyed in the flood.) As a direct result of the combination of the flood and the urban renewal program, the persons covered by the constructive occupancy policy had to bear the costs of finding replacement housing. Section 4623 reimbursed them for those costs. Persons in the plaintiffs' class, however, did not have to obtain replacement housing as a result of the flood/urban renewal program combination; presumably, as nothing to the contrary is alleged in the complaint, they were able to remain in the home they occupied at the time the flood struck. As they did not suffer the disproportionate expenses which Section 4623 was designed to remedy, their preclusion from those benefits by the constructive occupancy policy is rationally related to the statute's purpose. Accordingly, the policy does not violate equal protection.

■ Plaintiffs next maintain that the statutory requirement that a homeowner occupy his home prior to its acquisition in order to be eligible to receive Section 4623 benefits violates due process because the occupancy requirement creates an irrebuttable presumption that all per-

---

5. It would seem that the policy was a Congressionally mandated exception to the literal statutory requirement. Section 254 of the Disaster Relief Act of 1970, 42 U.S.C. § 4484, provided:

"Notwithstanding any other provision of law, no person otherwise eligible for any kind of relocation assistance payment authorized under Section 114 of the Housing Act of 1949 [the predecessor to the U.R.A.] shall be denied such eligibility as a result of his being unable, because of a major disaster as determined by the President, to re-occupy property from which he was displaced by such disaster."

sons who do not occupy their homes immediately prior to their acquisition are not "displaced persons" within the meaning of the U.R.A. This contention refers to a doctrine that has been applied in several recent Supreme Court cases. *See, e. g., Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); *United States Department of Agriculture v. Murry,* 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973); and *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). *See generally,* Note, *The Irrebuttable Presumption Doctrine in the Supreme Court,* 87 Harv.L.Rev. 1534 (1974). Generally, the doctrine has been applied to statutes which contained rules denying a benefit or placing a burden on all individuals possessing a certain characteristic. *See, e. g., United States Department of Agriculture v. Murry, supra,* which was a challenge to Section 5(b) of the Food Stamp Act of 1964, 7 U.S.C. § 2011 *et seq.,* which denied food stamp eligibility to any household which included a member 18 years old or older who was claimed as a dependent child for Federal income tax purposes by someone not a member of the household in question. In the irrebuttable presumption cases involving the denial of a benefit, the Court has inquired whether, in point of fact, possesssion of the benefit-denying characteristic necessarily removes a person from the class of persons that the statute in question was designed to benefit. If it does not, then the irrebuttable presumption that the possession of that characteristic does remove a person from that class of persons denies due process. *See, e. g., United States Department of Agriculture v. Murry, supra,* where the Court found that several households excluded by Section 5(b) would actually be needy (for example, tax dependency of one individual in a household may bear little relation to the neediness of the entire household) and concluded that the

exclusion was based on an irrebuttable presumption—that households falling within Section 5(b)'s coverage were not needy—which was sometimes contrary to fact and therefore unconstitutional.

The irrebuttable presumption doctrine has been severely criticized for, among other reasons, the fact that its application could invalidate almost any statute. *See e. g.,* Note, *The Irrebuttable Presumption Doctrine in the Supreme Court,* 87 Harv.L.Rev. 1534, 1549 (1974). Whatever the ultimate merits or limits of the doctrine, however, it is clear that it does not invalidate the statute under attack in this case. Plaintiffs argue conclusorily that the occupancy requirement creates an irrebuttable presumption because it "can . . . prevent a homeowner, like plaintiffs, from obtaining a benefit that the URA was designed to provide." Brief of Plaintiffs Contra to Federal Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment, p. 25. They overlook the purpose of Section 4623, which is to reimburse persons displaced from their homes by an urban renewal project for the cost of finding comparable replacement housing elsewhere. *See supra.* Congress undoubtedly concluded that homeowners who occupied their homes at the time of acquisition deserved special benefits because they would be compelled, by virtue of the acquisition, to go out and find suitable replacement housing, often on short notice and at a cost in excess of what they received for their former home. Section 4623 was intended to reimburse them for this excess cost. Persons like plaintiffs, by contrast, who do not occupy their property at the time it is acquired, and never have occupied it, are not "displaced" by the acquisition within the meaning of the statute. While they may very well eventually purchase other property to replace that acquired under the urban renewal program, they are not compelled to do so in the sense that persons faced with replacing the roof over their heads are compelled to find new housing once their homes are acquired. Because the

occupancy requirement is thus fully consistent with the statutory purpose of Section 4623, it does not create an impermissible irrebuttable presumption.

There being no genuine issue as to any material fact in this case, and the defendants being entitled to judgment as a matter of law in accordance with the above discussion,[6] summary judgment will be entered for the defendants.

---

6. Plaintiffs' claim that the Authority denied them their right of impartial review as provided in U.R.A. regulations at 24 C.F.R. § 42.225 (Complaint, Para. 12) is totally without merit. In the first place, plaintiffs assert no jurisdictional basis for such a claim, and thus the complaint is fatally defective according to the standards of Rule 8(a), Fed.R.Civ.P. Furthermore, because plaintiffs were not entitled to any relocation assistance in the first place, they incurred no damages by virtue of whatever departure from the prescribed review procedures may have occurred.