Jose LEDESMA and wife, Victoria Ledesma, Plaintiffs,

v.

URBAN RENEWAL AGENCY OF the CITY OF EDINBURG, TEXAS, and the United States Department of Housing and Urban Development, Defendants.

Civ. A. No. 75–B–65.

United States District Court,
S. D. Texas,
Brownsville Division.

May 24, 1977.

Ramon Garcia, Edinburg, Tex., Larry Watts, Houston, Tex., for plaintiffs.

Preston E. Henrichson, Edinburg, Tex., for Urban Renewal Agency.

Helen M. Eversberg, Asst. U. S. Atty., Houston, Tex., for HUD.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

DANIEL HOLCOMBE THOMAS, Senior District Judge, Sitting by Designation.

The above-styled cause was heard by the Court without a jury and taken under submission on March 1, 1977. The Court, after examining the pleadings and the evidence presented at the trial, enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. The plaintiffs, Mr. and Mrs. Ledesma, have filed this action against the Urban Renewal Agency and the Department of Housing and Urban Development seeking a declaratory judgment that the denial of a relocation housing assistance payment was unconstitutional and in violation of the laws of the United States, and declaring that the plaintiffs are entitled to such payment in an amount which was stipulated by the parties to be $6,221.00 less the rent owed to the defendants by the plaintiffs.

2. The Urban Renewal Agency's representative mailed an offer to acquire the Ledesmas' property at 1024 East Puebla, Edinburg, Texas, on August 7, 1972, to the plaintiffs. On March 21, 1974, the Agency acquired the property. The Ledesmas claim that shortly after they built the house on the property in question, Mr. Ledesma could not find employment in Edinburg sufficient to sustain living expenses and pay for the house. They moved to Frisco, Texas, where Mr. Ledesma found work and rented a house. The Ledesmas always intended to return to their Puebla Street home as soon as they could financially afford to do so. The Urban Renewal Agency recommended that the plaintiffs' claim for a relocation assistance payment be granted, but on review, the Area Office of the Department of Housing and Urban Development denied the claim on the ground that the Ledesmas had not occupied the property for the required 180 days before initiation of negotiations to acquire it, and that the "constructive occupancy" exception did not apply to them. The Court finds that there is an actual controversy between the parties within the meaning of 28 U.S.C. § 2201. The plaintiffs, having exhausted their administrative remedies, filed this action. Because no record of the proceedings or findings of the administrative bodies below was available, a full evidentiary hearing was necessary.

3. The plaintiffs are a married couple and are the parents of six children. In 1955, the plaintiffs, who were living with Mr. Ledesma's mother, purchased two lots across the street from his mother's home. These lots are the subject property herein and are identified for the purposes of this cause as 1024 E. Puebla Street. In 1967 plaintiffs borrowed money from the Harlingen National Bank and constructed a home on the property.

4. Jose Ledesma's sixth grade education and limited skills, coupled with the agricultural employment market, limited his income to an amount that made it difficult for him to feed his family and impossible for him to pay for his new home. Mr. Ledesma was forced to relocate temporarily in a better job market in the area surrounding the urban center of Dallas, Texas. Plaintiffs had been employed as migrant farm labor and were able to locate a steady source of jobs and income in the Central Texas area, several hundred miles away from their home and Mr. Ledesma's mother in Edinburg. Mr. Ledesma took employment in the Frisco, Texas, area as a truck driver and cotton picker. The plaintiffs intended to work in the more lucrative job market until they were able to finish paying for their home at 1024 E. Puebla in Edinburg. They had also by this time refinanced the loan to provide for extended time payments at $65.00 per month.

5. Even though the plaintiffs rented a house, enrolled their children in school and maintained a checking account in Frisco, they continued to treat their house on Puebla Street as their home. Their stay in Frisco was necessitated by their desire to pay for and retain the home they had built across the street from Mr. Ledesma's mother.

6. During the time the plaintiffs were in Frisco, they only rented a house there, they retained sole control of the house they owned in Edinburg, and allowed no other person to either stay briefly or live there under the guise of any agreement. Plaintiffs even provided for regular yard and garden maintenance by employing Mr. Juan Garcia on a year-round basis. Plaintiffs also returned to their home during the school year for weekend visits and returned each summer for extended stays. Plaintiffs

always considered the Puebla Street house their home and left it only in order to earn sufficient money to keep the payments up. Their furniture and household goods remained at the Puebla Street house.

7. The eligibility of the plaintiffs for the contested relocation assistance grant was supported and approved by the Urban Renewal Agency of the City of Edinburg, based upon the extensive investigation of that Agency's officers, up to the time the San Antonio office of the Department of Housing and Urban Development altered the recommendation of the local Agency, and denied the payment, based on the 180 day occupancy requirement.

8. For the purpose of establishing the 180 day occupancy period, negotiations for the acquisition of the property were initiated on August 9, 1972, by letter addressed to the plaintiff, Jose Ledesma, General Delivery, Frisco, Texas, from Phil Jordan, Executive Director of the Urban Renewal Agency of the City of Edinburg. On March 13, 1973, Jordan requested payment to the plaintiffs from Finis E. Jolly, Director, HUD Area Office of the contested grant, but on review that office denied the grant.

9. The Court finds that Mr. and Mrs. Ledesma were the owners of the subject property for 180 days prior to the initiation of negotiations by the Agency to acquire the property, but did not physically occupy the property during the 180 days immediately preceding the initiation of negotiations. The denial of relocation benefits was based on the Department's finding that the "constructive occupancy" exception did not apply to the plaintiffs. However, based on the facts set out above, the Court finds that the Department's decision in this respect was not based on substantial evidence, and as will be explained below, was in contravention of the purpose of the statute which this exception was designed to further.

10. The contested payment was stipulated to be in the amount of $6,221.00. The rent owed the defendants by the plaintiffs was stipulated to be $151.97. The Court finds that plaintiffs are entitled to $6,069.03.

11. It was agreed between the plaintiffs and the Urban Renewal Agency without the participation of the Department of Housing and Urban Development that a reasonable attorney's fee for the efforts expended on behalf of the plaintiffs by their attorneys would be $2,500.00. The Court finds this to be reasonable.

CONCLUSIONS OF LAW

1. Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202, that the denial of a relocation assistance or replacement housing payment was unconstitutional and in violation of the laws of the United States, and declaring that the plaintiffs are entitled to a payment in the amount of $6,221.00, under the Uniform Relocation Assistance and Real Property Acquisition Act. 42 U.S.C. §§ 4601 *et seq.* This Court has subject-matter jurisdiction over this matter. 28 U.S.C. § 1331(a); *Seeherman v. Lynn*, 404 F.Supp. 1318 (M.D. Pa.1975).

2. While judicial review of property acquisitions is precluded by the statute, judicial review of agency decisions regarding relocation payments and assistance, replacement housing, and title transfer and litigation expenses is governed by the Administrative Procedure Act. 42 U.S.C. § 4602(a); 5 U.S.C. §§ 701–706; *Barnhart v. Brinegar*, 362 F.Supp. 464 (W.D.Mo.1973); *Tullock v. State Highway Commission*, 507 F.2d 712 (8th Cir. 1974).

3. The plaintiffs herein are "person[s] adversely affected . . . by agency action" within the meaning of 5 U.S.C. § 702. The dispute involving the parties to this action is an actual controversy for the purposes of 28 U.S.C. § 2201.

4. The provision relating to the payment claimed by plaintiffs is, in pertinent part:

In addition to payments otherwise authorized by this title, the head of the Federal Agency shall make an additional payment not in excess of $15,000 to any displaced person who is displaced from a dwelling actually owned and occupied by such dis-

placed person for not less than one hundred and eighty days prior to the initiation of negotiations for the acquisition of the property. 42 U.S.C. § 4623(a)(1).

However, the Agency, in determining occupancy, also applies what is known as a "constructive occupancy" rule. This rule was adopted by the Agency to allow those actually displaced from their homes to qualify for a replacement housing payment and other relocation benefits, even though the homeowners, due to some circumstance beyond their control, did not actually occupy the property during the Act's 180 day period. While the rule is not definitively codified,[1] it presumably stems from the Act's mandate that that "fair and equitable treatment" of those displaced as a result of federally assisted programs is required. 42 U.S.C. § 4621. The rule, then, is an effort by the Agency to follow this policy and mitigate what might possibly be harsh and unfair results if the 180 day requirement were blindly or mechanically imposed.

■ 5. Since the Agency's decision under this rule directly affected the plaintiffs' claim for relocation benefits, its decision may be reviewed to determine if it is based on substantial evidence. 5 U.S.C. § 706(2); *Barnhart v. Brinegar, supra.*

■ 6. Based upon the Findings above, the Court concludes that the Agency's determination that the plaintiffs did not constructively occupy their home on E. Puebla Street was not based on substantial evidence. The plaintiffs were just as surely displaced by the Agency's acquisition of their home as if they had been physically present there for 180 days. Clearly this case, where the owners were forced by economic circumstances to work elsewhere to pay for their home, but had not given it up for a new home, comes within the rule and the policy of the Act itself. The Agency's refusal to invoke the exception under these facts and circumstances was not based on substantial evidence and therefore the Agency's denial of relocation benefits to the Ledesmas was invalid.

7. Plaintiffs are entitled to the declaratory judgment they seek. The Court concludes that the plaintiffs, Jose and Victoria Ledesma, are entitled to a replacement housing payment in the amount of $6,069.03. The plaintiffs' attorneys' fees of $2,500.00 and costs are to be taxed against the defendants.

A judgment in accordance with the above Findings of Fact and Conclusions of Law will be entered forthwith.

---

1. While the rule (or exception) is not codified, the Agency, in its Relocation Handbook, does give some clue as to its application in its answer to Question number 24 set out therein:

Q. The Act requires that the dwelling unit from which a homeowner is displaced must have been actually owned and occupied by him for not less than 180 days prior to the initiation of negotiations. Must the 180 days occupancy be in the period immediately preceding the initiation of negotiations to render the homeowner eligible for the payments?

A. Ordinarily, the 180 day occupancy requirement for homeowners is intended to be the period immediately preceding initiation of negotiations. However, if a displaced homeowner has been required to temporarily leave his home for such reasons as being drafted into the Armed Forces, being detailed to another geographic location by his employer, or otherwise being employed for a limited period of time in a location which does not permit full-time residency in his home, he may be deemed to be in 'constructive occupancy.' 'Constructive occupancy' may also be determined to exist if a person is temporarily confined to a hospital or is otherwise absent from his dwelling for reasons of health or an emergency. Determinations that a homeowner was in 'constructive occupancy' during the 180 day period prior to initiation of negotiations must be made on a case-by-case and HUD concurrence is required before a payment may be made. This concept of 'constructive occupancy' does not apply to an absentee owner.