**BEAIRD–POULAN DIVISION OF EMERSON ELECTRIC COMPANY**

v.

**DEPARTMENT OF HIGHWAYS, STATE OF LOUISIANA, and Claude S. Brinegar, Secretary of Transportation.**

Civ. A. No. 17678.

United States District Court,
W. D. Louisiana,
Shreveport Division.

Dec. 16, 1977.

Cecil E. Ramey, Jr., Thomas J. Wyatt, Hargrove, Guyton, Ramey & Barlow, Shreveport, La., for plaintiff.

William W. Irwin, Jr., Jonathan C. Harris, Asst. Gen. Counsels, Dept. of Transportation and Development, Baton Rouge, La., for defendants, Dept. of Highways.

Edward L. Shaheen, U. S. Atty., Frances O. Allen, Asst. U. S. Atty., Shreveport, La., for Secretary of Transportation.

## OPINION

DAWKINS, Senior District Judge.

Plaintiff, Beaird-Poulan Division of Emerson Electric Company (Beaird-Poulan) brought this action under The Uniform Relocation Assistance and Real Properties Acquisition Policies Act of 1970 (The Act), 42 U.S.C.A. § 4601, *et seq.*, to recover moving and relocation expenses from the Department of Transportation and Development of the State of Louisiana (DOTD).[1] Plaintiff also seeks an order of mandamus requiring the federal Secretary of Transpor-

---

1. The Department of Highways, originally named defendant in this action, was abolished by La.Acts 1976, No. 513, and its functions transferred to the Secretary of the Department of Transportation and Development, an executive department of this State.

tation to obtain assurances that Louisiana will comply with The Act.

Suit was filed on March 14, 1972, but dismissed on September 24th of 1973 because of our interpretation of certain provisions of the Louisiana Constitution of 1921. See 362 F.Supp. 547 (W.D.La., 1973). The Fifth Circuit disagreed, reversed, and remanded,[2] holding that The Act was applicable to Louisiana on January 2, two months prior to Beaird-Poulan's move.

On July 19, 1976, we ordered the State, through DOTD, to entertain Beaird-Poulan's claim for relocation assistance and to grant a full, fair, and complete adversary administrative hearing. We specifically retained jurisdiction to consider the administrative treatment of Beaird-Poulan's claim.

DOTD has not held an adversary hearing. It has rebuffed plaintiff's request for relocation assistance. The agency contends that Beaird-Poulan is not a displaced person within the coverage of The Act. All steps for reconsideration have been taken and the administrative decision now is final.

After return of the administrative record to this Court, Beaird-Poulan and DOTD filed cross-motions for summary judgment. Both of these were denied. After a hearing, necessary to supplement the administrative record, held on July 8, 1977, we took the entire matter under advisement upon briefs to be filed. All such briefs now having been received, we proceed to decision on the merits.

## FINDINGS OF FACT

1. When the action was filed, Beaird-Poulan was a Delaware corporation engaged in manufacture and assembly of power chain saws in Shreveport, Louisiana. Emerson Electric Company since has acquired all assets of Beaird-Poulan and it now is known as the Beaird-Poulan Division of Emerson Electric Company which now has acquired and succeeded to all rights of Beaird-Poulan, Inc., including the cause of action asserted herein. From 1950 through April of 1971, Beaird-Poulan and its corporate predecessor, Poulan Saw Company, had carried out their manufacturing activities at a plant located on Greenwood Road in Shreveport.

2. Facilities at the Greenwood Plant were located on a seventeen-acre tract of land owned by plaintiff. This tract was rectangularly shaped, measuring roughly 250 feet in width fronting on Greenwood Road and extending rearward 2700 feet. Plant facilities occupied only the front portion of the tract; property to the rear was not in use.

3. Prior to 1971, Beaird-Poulan had made various additions to the Greenwood facility to increase plant capacity. Between 1969 and 1971, the national (and international) chain saw market entered a period of great expansion. Technological advances led to substantial reductions in chain saw weights. These light weight saws generated a new and rapidly expanding market of so-call casual users. The relatively low cost of the smaller saws was off-set by the high volume potentials of sales. Beaird-Poulan began design of a light weight saw in 1969. Two years later, in the spring of 1971, the new consumer-oriented saw was being produced. By all management judgments, substantial additional physical expansion to the Greenwood Plant was imperative to meet even the most conservative production forecasts.

4. In the spring of 1970, Beaird-Poulan learned that a portion of its Greenwood Road property was to be expropriated for a federally assisted limited access highway project designated as No. I–220–I(73)12, commonly known as Interstate By-pass 220. Formal negotiations for acquisition of the proposed interstate right-of-way from Beaird-Poulan began in January of 1971. Judgment of expropriation was entered May 3, 1971. This taking severed Beaird-Poulan's property into two roughly equal tracts of about six and one-half acres each. No part of Beaird-Poulan's plant facility actually was located within the three-acre portion expropriated.

---

2. *Beaird-Poulan, Inc. v. Department of Highways, State of Louisiana*, 497 F.2d 54 (5th Cir., 1974), cert. den., 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (1975).

5. During March and April of 1971, Beaird-Poulan moved its manufacturing and assembly operations to a newly purchased plant site located on Flournoy-Lucas Road, also in Shreveport. This move was made as the result of the pending expropriation proceedings (brought by the State Department of Highways, under its powers of eminent domain). Expansion of plant facilities was necessary to meet conservative production forecasts. It is clear that Beaird-Poulan's officers and directors favored adding to the Greenwood Road Plant as the cheapest and most practical alternative. Only after they learned of the pending expropriation and concluded that there would not be sufficient space for the required improvements on the front half of the Greenwood tract did management seriously consider moving the plant. Severed from the existing plant facilities by a limited access highway, the rear portion of the Greenwood property no longer was available for plant expansion. Shortly after formal expropriation proceedings were instituted, Beaird-Poulan purchased and moved to the Flournoy-Lucas Plant. The new plant was located on approximately the same acreage as the Greenwood Plant prior to expropriation.

## CONCLUSIONS OF LAW

We have jurisdiction over the parties and subject matter of this action. 28 U.S.C.A. § 1331(a), 28 U.S.C.A. § 1361.

■ Questions concerning our jurisdiction and the justiciability of this action earlier have been raised and resolved. Defendants argue that judicial review of agency determinations under The Act is expressly prohibited. We disagree. No part of The Act precludes judicial review of subchapter 2 benefit determinations. Indeed, a proposed amendment to The Act in the House of Representatives, which would have denied the right of judicial review in all instances, was omitted from the final bill. The conclusion is inescapable that Congress did not intend to prohibit all judicial review. See *Barnhart v. Brinegar*, 362 F.Supp. 464 (W.D.Mo., 1973).

A number of recent decisions have found that sections of subchapter 2, providing for relocation assistance, are judicially enforceable and that agency actions under these sections are subject to review. *Tullock v. State Highway Commission of Missouri*, 507 F.2d 712 (8th Cir., 1974); *Ledesma v. Urban Renewal Agency of Edinburg, Texas*, 432 F.Supp. 564 (S.D.Tex., 1977); *Dawson v. United States Department of Housing and Urban Development*, 428 F.Supp. 328 (N.D. Ga., 1976); *Moorer v. Department of Housing and Urban Development*, 417 F.Supp. 1261 (W.D.Mo., 1976); *Boston v. United States*, 424 F.Supp. 259 (E.D.Mo., 1976); *Seeherman v. Lynn*, 404 F.Supp. 1318 (M.D. Pa., 1975); *Whitman v. State Highway Commission of Missouri*, 400 F.Supp. 1050 (W.D.Mo., 1975); *Lewis v. Brinegar*, 372 F.Supp. 424 (W.D.Mo., 1974).

The Uniform Relocation Assistance Portion of The Act plainly was designed to standardize treatment of persons required to vacate premises as the result of Federal, *and federally assisted*, land acquisitions. The Act contains the following declaration of policy:

> "The purpose of this subchapter is to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of Federal *and federally assisted* programs in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole." 42 U.S.C.A. § 4621. (Emphasis supplied.)

The Act provides for payments by the United States Government to compensate displaced persons. Beaird-Poulan's claim for moving-related expenses is predicated upon 42 U.S.C.A. § 4622(a) which provides:

> "(a) Whenever the acquisition of real property for a program or project undertaken by a Federal agency in any State will result in the displacement of any person on or after January 2, 1971, the head of such agency shall make a payment to any displaced person, upon proper application as approved by such agency head, for—

"(1) actual reasonable expenses in moving himself, his family, business, farm operation, or other personal property;

"(2) actual direct losses of tangible personal property as a result of moving or discontinuing a business of farm operation, but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, as determined by the head of the agency; and

"(3) actual reasonable expenses in searching for a replacement business or farm."

As a condition of receiving federal financial assistance, the various States have agreed to provide the benefits of The Act. Pursuant to regulations of the United States Department of Transportation (49 C.F.R. Part 25) and the Federal Highway Administration (23 C.F.R. Part 740), Louisiana has established procedures whereby DOTD must determine applicants' eligibility arising from federal assisted projects within this State. See La.R.S. 38:3101, et seq.

This action was brought against DOTD because that agency refused to entertain Beaird-Poulan's claim for relocation expenses. Cut off from expected administrative procedures, Beaird-Poulan herein sought a money judgment against the State for its moving expenses. The decision by the Fifth Circuit, on appeal from our original dismissal of the complaint, established Beaird-Poulan's right to apply for relocation benefits. Because of the protracted litigation between Beaird-Poulan and DOTD concerning the Greenwood expropriation, in this action and in the State Courts, Beaird-Poulan objected to our order of July, 1976, providing for administrative review of its claim for moving expenses. Plaintiff felt that the adversary relationship would preclude impartial consideration by DOTD's reviewing officers. Although this action was brought in order to by-pass administrative procedures, a final decision has been made by DOTD. Our function thus is to review that decision denying relocation assistance benefits. None of the factual findings by DOTD officers are in dispute. The only question now before us concerns proper construction of the statutory definition of "displaced persons."

Relocation benefits are reserved for "displaced persons," as defined by The Act, 42 U.S.C.A. § 4601, which provides in pertinent part:

"As used in this chapter—

.    .    .    .    .

"(5) The term 'person' means any individual, partnership, corporation, or association.

"(6) The term 'displaced person' means any person who, on or after January 2, 1971, *moves from real property, or moves his personal property from real property*, as a result of the acquisition of such real property, in whole *or in part*, or as the result of the written order of the acquiring agency to vacate real property, for a program or project undertaken by a Federal agency, or *with Federal financial assistance* ; and solely for the purposes of sections 4622(a) and (b) and 4625 of this title, as a result of the acquisition of or as the result of the written order of the acquiring agency to vacate other real property, on which such person conducts a business or farm operation, for such program or project.

.    .    .    .    ."

(Emphasis supplied.)

The question before us is whether Beaird-Poulan falls within the defined class of "displaced persons." DOTD and the Secretary of Transportation vigorously argue that it does not. Defendants interpret the definition of "displaced persons" in 42 U.S. C.A. § 4601(6) so as always to exclude applicants who did not remove personal property from within the boundaries of acquired land unless that land was being used as a business or farm operation as contemplated by, the latter part of § 4601(6). Put another way, DOTD will not entertain application for reimbursement of the costs of moving a business when the move resulted from federally assisted expropriation *of less than all*

*the applicant's real property and the acquired portion was not currently used for business purposes.* Beaird-Poulan's administrative claim was rejected because no part of the Greenwood Plant facility was located upon the three-acre tract taken for Interstate I–220.

■ Beaird-Poulan argues that the clear language of § 4601(6) provides that it is a "displaced person," entitled to relocation assistance and that the interpretation of that statutory definition made by DOTD and the Secretary of Transportation is strained and unsupported. We agree.

According to DOTD, a person is never displaced by a partial taking unless that part of the property in use is located within the right-of-way. Emphasis is placed upon the word "such" in the subsection (6) language "moves from real property . . . as a result of the acquisition of *such* real property . . . ." Without there being more to The Act, the requirement that the applicant actually move from the property acquired would be plausible. However, the quoted language from subsection (6) is followed by the qualifying clause "in whole or in part." Read in context, the definition, paraphrased, includes persons who are forced by circumstances to move from real property as the result of a partial acquisition of such real property. Beaird-Poulan did just that. Acceptance of the agency interpretation of subsection (6) renders meaningless the clause "in whole or in part."

Defendants contend that "in whole or in part" refers not to spatial divisions of a tract of land but to components of ownership, providing for coverage under the Act if less than a full ownership interest in the property is acquired. A portion of House Report No. 91–1656[3] is offered to support this view. At hearings held in contemplation of uniform relocation assistance legislation, Post Office representatives had testified that their facilities often were privately constructed, then leased to the Government. The suggestion that this testimony underscores defendants' view of the subsection (6) language "in whole or in part" is without merit. The testimony by Postal officials is included in the House Report as an illustration of congressional intent to provide benefits for displacements resulting from a federal project even if the property was not acquired directly by the federal agency. See *Moorer, supra.* The language of subsection (6) did not originate in the 1970 Uniform Relocation Act but substantially was adopted from the Relocation Assistance section of the Federal-Aid Highway Act of 1968. The legislative history of that Act does not support defendants' narrow construction of subsection (6).

Defendants have insisted that the only way a person who does not actually move personal property *from the acquired right-of-way* can receive relocation benefits is if the tract *actually taken* was used for a business or farm operation under the so-called second definition of subsection (6). However, the legislative history of The Act clearly shows that this provision was intended to benefit those, especially in rural areas, who might reside on one tract of land and operate a store or other facility on a separate, possibly non-contiguous tract. If the business property were taken for a federally assisted project and the owner could not relocate in the immediate area, The Act would cover expenses of moving from the dwelling located upon property no part of which was taken for the project. This extended definition of displaced persons is thoroughly consistent with logical construction of the first portion of subsection (6).

We have found no reported decisions which directly illuminate the issues before us. Neither does the legislative history of The Act or of the Federal-Aid Highway Act of 1968 offer any guidance. Notwithstanding, the policies and purposes of The Act are clear and its provisions should be so interpreted as to effectuate congressional intent.

---

**3.** H.R.Rep.No.1656, 91st Cong., 2nd Sess. (1970), reprinted in 1970 U.S.Code Cong. & Ad. News 5850, 5853.

By the plain language of § 4601(6), Beaird-Poulan qualifies as a displaced person. Interpretation of that statute advanced by DOTD and the Secretary of Transportation, which excludes Beaird-Poulan from coverage under The Act, imposes requirements not found in The Act itself. An administrative determination on questions of law does not have any presumption of correctness, and although it might be entitled to some weight or special consideration, it is by no means conclusive. *Strachan Shipping Co. v. Shea*, 276 F.Supp. 610 (S.D.Tex., 1967), aff'd on other grounds, 406 F.2d 521 (5th Cir., 1969), cert. den., 395 U.S. 921, 89 S.Ct. 1773, 23 L.Ed.2d 238 (1969). We must accept that the provisions of The Act express what Congress indeed intended. To the extent that interpretation of one of those provisions serves to narrow or restrict the grant of relocation assistance, such is inconsistent with The Act and cannot be allowed to stand. See *Tullock, supra; Moorer, supra.*

It appears that the narrow definition of "displaced persons" advanced by defendants is colored by practical considerations. They fear that, without objective standards, benefits may go to unworthy applicants. The Act does not require that assistance be given to every person who loses a portion of his land to a federally assisted project. Reimbursement of expenses is due only when it can be shown that the owner moved as a result of the partial acquisition.

In addition to its claim against DOTD for moving expenses, Beaird-Poulan seeks a mandamus order to compel the Secretary of Transportation to comply with the requirements of 42 U.S.C.A. § 4630. That provision mandates that the Secretary, before approving any grant to or contract with a State agency for a federally assisted program, receive satisfactory assurances that the State agency will provide the benefits of The Act to persons displaced by that program.

Although DOTD now has submitted assurances that it will comply with The Act, none were provided for the period during which Beaird-Poulan was displaced. Without question DOTD is obliged to provide relocation benefits for persons displaced by projects covered by The Act after January 2, 1971, the effective date of The Act. It appears that, under these circumstances, issuance of a mandamus order against the Secretary of Transportation would accomplish nothing. Accordingly, we decline to do so.

DOTD has not yet reviewed Beaird-Poulan's claimed moving expenses. Accordingly, we direct DOTD, within thirty days from this date, to review these claims in accordance with our ruling that Beaird-Poulan is a displaced person as defined by The Act. If an amicable settlement is not forthcoming, DOTD and Beaird-Poulan will, upon motion of either party, be required to appear before us for determination of the amount of reimbursement due plaintiff.