[Civ. No. 1679. Fifth Dist. May 30, 1973.]

BOZO BOZAICH et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

## COUNSEL

Desmond, Miller & Desmond, Richard F. Desmond, Errol V. Miller and Donald H. Wollett for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, James E. Sabine, Assistant Attorney General, Lloyd Hinkleman and John M. Morrison, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

GARGANO, J.—Respondent in this appeal is the State of California. Appellants are 40 individuals; they appeal from an order of the Superior Court of Sacramento County.

On December 11, 1970, appellants made an application with the State Board of Control pursuant to section 915 of the Government Code for leave to file a late claim.[1] The proposed claim inter alia alleged that each claimant owned or rented property within the boundaries of the "State Capitol Plan," and that the State of California had acquired or was in the process of acquiring the property by settlement agreement under threat of eminent domain or by judgment in eminent domain. It alleged, further, that the claimants had been or were being required to move without any payment or remuneration for moving or relocation expenses; it sought reimbursement for such expenses in an unspecified amount on behalf of the claimants and all other persons who owned property within the boundaries of the "State Capitol Plan" and who were similarly situated.

The application was denied by the State Board of Control on January 20, 1971.

On April 1, 1971, appellants filed a motion in the Superior Court of Sacramento County, pursuant to section 946.6, asking to be relieved from the claim-filing requirements of the Government Code on the ground that the delay in presenting the claim to the State Board of Control was caused by time consumed by appellants' counsel in researching the law and in investigating the validity of the claims.

On the same day appellants filed a class action against the State of California to recover the moving and relocation expenses; the complaint expanded the class to every person who owned or rented property in California and who was similarly situated and prayed for judgment in excess of $1,000,000.

---

[1]All citations of code sections refer to the California Government Code unless otherwise designated.

On May 26, 1971, the court denied appellants' motion to be relieved from the claim-filing requirements of the Government Code. Thereupon, the state moved to strike the complaint. It also filed a general demurrer alleging that the complaint did not state a cause of action and that the cause of action, if any, was barred by the provisions of Government Code sections 905.2 and 911.2.

On July 19, 1971, the court denied the state's motion to strike the complaint. The court also sustained the demurrer with leave to amend; the trial judge determined that as to Bozo Bozaich and Matia Bozaich a claim was presented timely and apparently refused to strike the complaint for this reason.

On July 26, 1971, appellants filed a first amended complaint; the amended complaint contained several new allegations and, like the initial complaint, was filed on behalf of the original plaintiffs and every person in the State of California who was similarly affected.

On August 2, 1971, the state filed a notice of motion to strike from the first amended complaint all references to any plaintiff other than Bozo and Matia Bozaich. It also filed a general demurrer; the motion to strike was granted and the demurrer was overruled. It is from the order granting the motion to strike that appellants, including the Bozaiches, have appealed.

Appellants admit that in order to recover a money judgment against the State of California, in an action based on tort or contract, the plaintiff must allege and prove that he presented a claim to the State Board of Control within the time required by section 911.4. (*Veriddo* v. *Renaud*, 35 Cal.2d 263 [217 P.2d 647]; *Burgdorf* v. *Funder*, 246 Cal.App.2d 443, 447 [54 Cal.Rptr. 805].) The main thrust of appellants' appeal is that their action is a class action and that the individual claim requirements of division 3.6 have no application to a class action. Appellants assert that a class action constitutes an exception to the doctrine of exhaustion of administrative remedies and that the "filing of a claim by a representative plaintiff will carry into court a class of unnamed plaintiffs similarly situated."

We are confronted with two preliminary and perplexing problems. The first is whether a class claim was ever presented timely to the State Board of Control as appellants assert. The record shows that appellants presented an application to file a late claim and that the application was rejected. The record shows further that appellants then moved the superior court to relieve them of the claim-filing requirements of the Government Code and that this request was denied by the court. Finally, the record shows that

appellants did not appeal from the court's order denying their motion and that this order, an appealable order, is now final. (*Dockter* v. *City of Santa Ana,* 261 Cal.App.2d 69 [67 Cal.Rptr. 686]; 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 171, p. 1035.)

Appellants attempt to solve the problem with a bootstrap argument; they insist that the claim of Bozo and Matia Bozaich "gathered" in all the other appellants and every person in the State of California who was similarly situated.

While the trial court may have ultimately ruled that as to Bozo and Matia Bozaich a claim was presented timely, the fact remains that the court's earlier order denying appellants' motion to be relieved from the claim-filing requirements of the Government Code included the Bozaiches and, arguably, is a final order determining that no timely claim was ever presented by anyone. In addition, if appellants' solution to the problem were adopted, the time requirements for the presentation of claims to the state and other governmental entities would be meaningless as to claims of the kind involved in this case, and stale and outlawed causes of action could be revived, no matter when the causes of action arose.

Second, it seems clear to us that the lawsuit which appellants commenced in the court below is an action in inverse condemnation, not a class action for damages arising from tort as appellants seemingly assume; each of the 40 named appellants is seeking to recover damages necessarily flowing from the taking of his property by the state for a public purpose.[2] It is apparent, however, from the claim appellants attempted to file with the State Board of Control that their properties were taken (and presumably paid for) by the state pursuant to settlement agreements or judgments acquired in eminent domain proceedings. It is doubtful as to the 40 named appellants, at least, that the complaint states a cause of action. "A party cannot split a single and entire demand into separate causes

[2]Inverse condemnation law and tort law have frequently been confused with each other in cases involving injury to real property because many factual situations involving property damage caused by a public entity are appropriately based on either tort or inverse condemnation theories of recovery. (See Condemnation Practice in California, Inverse Condemnation (Cont. Ed. Bar 1973) p. 331.) The complaint in this case does not allege any active negligence or breach of duty on the part of the state, nor does it allege that the taking of the property was not in pursuance of a public use. (See *Nestle* v. *City of Santa Monica,* 6 Cal.3d 920 [101 Cal.Rptr. 568, 496 P.2d 480]; *Neff* v. *Imperial Irrigation Dist.,* 142 Cal.App.2d 755 [299 P.2d 359].) On the contrary, the complaint alleges that the properties were taken by the state "in condemnation," and this implies that they were taken for a public use.

of action," particularly where, as here, the party who has split the cause of action has merely conjured up a new theory for recovery; otherwise, there would be no end to litigation. (1 Cal.Jur.3d, Actions, § 70, p. 528.)

We do not find it necessary to concern ourselves with these problems. We have concluded that appellants' lawsuit does not qualify as a class action and that the trial court's order should be affirmed for this if for no other reason.

The statutory authority for the filing of class actions is found in Code of Civil Procedure section 382. Under this section two requirements must be met: (1) there must be an ascertainable class, and (2) there must be a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. These requirements were reviewed extensively by the California Supreme Court in three recent opinions, and there is nothing we can add to the scholarly discussions contained in those opinions. (*Daar* v. *Yellow Cab Co.*, 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732]; *Vasquez* v. *Superior Court*, 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964]; and *Collins* v. *Rocha*, 7 Cal.3d 232 [102 Cal.Rptr. 1, 497 P.2d 225].) It is sufficient to state that the perimeters of section 382 of the Code of Civil Procedure have been broadened widely and that in determining whether the requirements for a class action have been met, we are no longer fettered with rigid and unbending concepts. For example, it is not now essential to the establishment of a class action that a common fund exist; "[n]or is a common recovery required in order to establish a community of interest." (*Daar* v. *Yellow Cab Co., supra,* p. 707.) Also, "[t]he mere fact that separate transactions are involved does not of itself preclude a finding of the requisite community of interest so long as every member of the alleged class would not be required to litigate numerous and substantial questions to determine his individual right to recover subsequent to the rendering of any class judgment which determines in plaintiffs' favor whatever questions were common to the class." (*Vasquez* v. *Superior Court, supra,* p. 809.)

However, the right to bring a class action is not without limitation. An ascertainable class is still a necessary ingredient and "whether there is an ascertainable class depends in turn upon the community of interest among the class members in the questions of law and fact involved." (*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at p. 706.) Thus, if the rights of each member of the class are dependent upon the facts applicable only to him, there is not the requisite ascertainable class required for a representative suit. (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d at p. 809.) Further, if the community of interest is mainly one of law, and if the factual issues

requiring separate adjudication are numerous and substantial, a class action does not subserve the judicial process or the litigants. (*Collins* v. *Rocha, supra,* 7 Cal.3d at p. 238.)

The essential requirements of a class suit have not been met in this case. The complaint seeks to recover moving and relocation expenses on behalf of each claimant whose property was taken by the State of California in eminent domain, and yet the class purports to include every person who owns or owned or who rents or rented property in California regardless of when the taking occurred or will occur and no matter how it was or will be accomplished. Consequently, while it is clear that every member of the alleged class has a community of interest in the question of law involved, it is also apparent that the right of each individual to recover money damages against the state is based necessarily on a separate set of facts applicable to him only.

Even if the common question of law were decided in appellants' favor, the independent factual issues which would have to be separately litigated in this case would be so numerous that the maintenance of the alleged class action could not possibly serve the judicial process or the parties involved. Following are some examples. Where, when and in connection with what state project were the properties taken; what was the nature of the claimant's ownership in a particular parcel taken; what relocation and moving expenses were incurred by the claimants; were the moving and relocation expenses incurred as a direct and proximate consequence of the taking; were any previous payments made to or advantageous settlements bestowed upon an individual who is now included as a member of the class; was the same legal issue litigated in a separate eminent domain proceeding between the state and a member of the class; could it have been litigated; what affirmative defenses does the state have against each individual claimant?[3]

The cases of *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695, *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, and *Collins* v. *Rocha, supra,* 7

---

[3]As to the removal and relocation expenses alone, the complaint suggests that the following factual issues could arise as to each complaint: ". . . the cost of dismantling, disconnecting, crating, loading, insuring, temporarily storing, transporting, unloading and reinstalling personal property, including service charges in connection with effecting and reinstalling and necessary temporary lodging and transportation of eligible persons; the cost of alteration of personal property necessitated by the condemnation; the difference between the value of personal property in place and the salvage sales price of such personal property necessarily sold as a direct and proximate result of the acquisition; and the loss in value by the rendering of certain personal property obsolete in connection with businesses conducted on the property by reason of the necessity of relocation of the business together with interest thereon from the date that defendant took possession. . . ."

Cal.3d 232, are distinguishable. In each of those cases the class action was allowed even though each member of the class would have to prove separately his own damages. However, in those cases there was a well-defined community of interest in a substantial number of questions of law and fact.

In the *Daar* case, the action was to recover overcharges made by the defendant Yellow Cab Company. The complaint alleged that all members of the class had used taxi cab transportation within four years immediately preceding the commencement of the action, that all had purchased Yellow Cab script books and had paid for the transportation with script book coupons, that all members of the class were overcharged for the taxi cab services furnished to them, that the percentage of the rate of overcharge to each member of the class was identical and uniform, that all sustained a loss by reason of the overcharges, and that the exact amount of the overcharges could be ascertained from defendant's books and records.

In the *Vasquez* case, the action was brought by 37 plaintiffs on behalf of themselves and other residents of San Joaquin and Stanislaus Counties who had purchased frozen food and freezers from the defendant. It was alleged that each member of the class had executed identical installment sales contracts to finance the purchases, that various salesmen used a common sales pitch from a manual in making the same representation to all, and that the falsity was common to all.

In the *Collins* case, the complaint was filed by nine farm laborers on behalf of themselves and thirty-five other farm laborers against the defendant. The complaint alleged that the defendant was a farm labor contractor, that all of the members of the class were hired by defendant in Los Angeles on representations of work for all, that defendant intended to keep only the best qualified and discharged many of the plaintiffs shortly after arrival, and that other common misrepresentations were made by defendant concerning the conditions of the job site and the return transportation to Los Angeles at the conclusion of the job.

We affirm the judgment for another reason.

 To allow appellants their so-called class action, we would have to ignore the plain language of the claim statute. Under section 905.2, the filing of a claim pursuant to section 910 is a prerequisite to the commencement of an action in inverse condemnation or for damages caused by tort or breach of contract, and the latter section obviously contemplates

individual, not class, claims.[4] What is worse, we would have to hold that an unascertainable number of claimants whose properties allegedly were taken by the state over the years for state purposes could sue the state for damages without disclosing, until the time of trial or during discovery proceedings, the descriptions of the properties taken or when, where and under what conditions the properties were taken. Such a holding would erode the very foundation upon which the claim-filing statutes rest and could prove chaotic to the state's fiscal policies and procedures. It would also do violence to the fundamental principle that in interpreting a statute a court is not justified in ignoring the plain meaning of the words used unless it clearly appears that the interpretation given carries out the intent of the Legislature. (*Twaits* v. *State Bd. of Equalization,* 93 Cal.App.2d 796 [210 P.2d 40].) As has been stated repeatedly, the purpose of the claim-filing requirements of the Government Code is to give the state and public entities the opportunity to investigate promptly, to negotiate settlements, to prepare a defense and to rectify conditions and practices which gave rise to the claim. (*C. A. Magistretti Co.* v. *Merced Irrigation Dist.,* 27 Cal.App.3d 270 [103 Cal.Rptr. 555].)

The right of a plaintiff to file a class action on behalf of himself and others originates from equitable concepts, and in this state the right is found in section 382 of the Code of Civil Procedure. The claim-filing requirements of the Government Code, on the other hand, stem from the legislative prerogative to impose conditions as a prerequisite to the commencement of any action against the state for money damages (*Fidelity & Deposit Co.* v. *Claude Fisher Co.,* 161 Cal.App.2d 431 [327 P.2d 78]); they are specific and mandatory regulations which must be strictly complied with. (*Hall* v. *City of Los Angeles,* 19 Cal.2d 198 [120 P.2d 13]; *Petersen* v. *City of Vallejo,* 259 Cal.App.2d 757 [66 Cal.Rptr. 776]; *Ruffino* v. *City of Los Angeles,* 226 Cal.App.2d 67 [37 Cal.Rptr. 765].) ■ It is a cardinal rule that specific statutory regulations control over a general statute, and this is particularly true where, as here, the specific regulations are mandatory. (*Hartford Acc. etc. Company* v. *City of Tulare,* 30 Cal.2d 832 [186 P.2d 121]; *Rose* v. *State of California,* 19 Cal.2d 713 [123 P.2d 505].)

■ Appellants' answering argument does not come to grips with the real issue; they have built a man of straw only to destroy him. Appellants

---

[4]The claimant must state, among other things, his name and post office address, the date, place and circumstances of the occurrence or transaction which gave rise to the claim, a general description of the indebtedness, obligation, injury, damages or loss incurred, and the name or names of the public employee or employees causing the injury, damage or loss; and the amount claimed.

698

equate the claim-filing requirements of division 3.6 with an administrative remedy and then assume that the state's only complaint is that they did not pursue that remedy. Appellants conclude that the individual claim-filing requirements have no application to a class action because a class action constitutes an exception to the doctrine of exhaustion of administrative remedies.

■ The doctrine of exhaustion of administrative remedies evolved for the benefit of the courts, not for the benefit of litigants, the state or its political subdivisions. It rests "on considerations of comity and convenience," and its basic purpose is to secure a "preliminary administrative sifting process" (2 Am.Jur.2d, Administrative Law, § 595, p. 428) to lighten the burden of overworked courts in cases where administrative remedies are available and are as likely as the judicial remedy to provide the wanted relief. (*Morton* v. *Superior Court,* 9 Cal.App.3d 977, 982 [88 Cal.Rptr. 533].) ■ The claim-filing requirements of the Government Code are directly related to the doctrine of governmental immunity and exist for the benefit of the state, not the judicial system; they were adopted by the Legislature in the exercise of its legislative prerogative to impose conditions as a prerequisite to the commencement of any action against the public entity. (*Fidelity & Deposit Co.* v. *Claude Fisher Co., supra,* 161 Cal.App.2d 431.) The doctrine of exhaustion of administrative remedies has no relationship whatever to division 3.6 of the Government Code, and it follows that any exception to that doctrine is not controlling here.

The cases cited by appellant are not in point. They do not involve actions against the state for money damages, and at best stand for the proposition that an administrative remedy, even if one exists, may be dispensed with if it is clear that it would not produce the desired relief.

In *Ramos* v. *County of Madera,* 4 Cal.3d 685 [94 Cal.Rptr. 421, 484 P.2d 93], the plaintiffs were seeking injunctive and/or declaratory relief which was unavailable at the administrative level. In *Diaz* v. *Quitoriano,* 268 Cal.App.2d 807, 812 [74 Cal.Rptr. 358], the question presented was completely beyond the pale of any administrative remedy; petitioner sought to compel a county welfare department and its director to advise all applicants for aid of their right to make written application therefor and of their right to a fair hearing in case of dissatisfaction. The court pointed out that the rule " 'has no application in a situation where an administrative remedy is unavailable or inadequate.' " In *Morton* v. *Superior Court, supra,* 9 Cal. App.3d 977, the plaintiffs were members of the city police department and were seeking a judicial declaration that the time consumed by policemen in putting on and taking off their uniforms and during lunch periods was

compensable overtime. In that case this court granted the city's petition for a writ of prohibition on the ground that the plaintiffs had not exhausted their administrative remedy.[5]

Appellants' remaining contention is that the claim-filing requirements of the Government Code, insofar as they prevent their filing a class claim or a class action, are unconstitutional; similar arguments have been rejected repeatedly. (*Dias* v. *Eden Township Hospital Dist.,* 57 Cal.2d 502 [20 Cal.Rptr. 630, 370 P.2d 334]; *Tammen* v. *County of San Diego,* 66 Cal. 2d 468 [58 Cal.Rptr. 249, 426 P.2d 753]; *Hom* v. *Chico Unified Sch. Dist.,* 254 Cal.App.2d 335 [61 Cal.Rptr. 920].)

The order is affirmed.

Brown (G. A.), P. J., and Franson, J., concurred.

A petition for a rehearing was denied June 29, 1973, and the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied July 25, 1973.

---

[5]We are mindful that circumstances might arise under which it might be said that the filing of a class claim with the public entity amounted to compliance with the claim-filing requirements of the Government Code in the strict sense because it satisfied fully the intents and purposes of those requirements. For example, it is arguable that where the members of a class are readily ascertainable, have a well-defined community of interest in the facts, seek a common recovery, and where the state's liability to the entire class is easily discoverable from its own records, individual claims from each claimant would serve no useful purpose and should be dispensed with. This is not such a case, and we limit our opinion accordingly.