[Civ. No. 15085. Third Dist. June 29, 1976.]

RAYMOND BAIZA, Plaintiff and Appellant, v.
SOUTHGATE RECREATION AND PARK DISTRICT,
Defendant and Respondent.

COUNSEL

Loren Mitchell for Plaintiff and Appellant.

Files, McMurchie, Foley & Brandenburger and Donald W. McMurchie for Defendant and Respondent.

**OPINION**

**REGAN, Acting P. J.**—This is an appeal from a judgment denying petitioner's amended petition for writ of mandamus which sought to command the respondent Southgate Recreation and Park District (div. 5, ch. 4, Pub. Resources Code) to provide statutory "relocation benefits" to petitioner, because he was forced to vacate his rented residence by action of the respondent.

On April 25, 1972, respondent district acquired title by grant deed to the real property in Sacramento occupied as a tenant by petitioner. On or about May 12, 1972, petitioner was advised in writing of the purchase and told that he could continue as a month-to-month tenant of

respondent until August 1, 1972. Petitioner defaulted in rent payments and was notified on or about July 12, 1972, that he was three months in arrears. A three-day notice to pay rent or quit the premises was served on him on July 28, 1972. Prior to institution of this proceeding, through his attorney, petitioner made an oral demand upon respondent for relocation benefits; the demand was denied with the suggestion that it be made in writing. No such written demand was made. No request for a review by the public entity was made (pursuant to Gov. Code, § 7266). No claim for damages against respondent public agency was filed (pursuant to Gov. Code, § 905 et seq.). The amended petition was filed on November 19, 1973, and was served on April 12, 1974. On October 8, 1974, having made findings of fact and conclusions of law, the trial court rendered judgment denying a peremptory writ.

The issues in this case primarily involve interpretation of certain portions of chapter 16 (commencing with § 7260) of division 7 of title 1 of the Government Code, relating to relocation assistance. Chapter 16 was added to the Government Code by the Legislature by chapter 1489 of the Statutes of 1969. That act also added certain provisions to the Health and Safety Code, the Public Utilities Code and the Streets and Highways Code. The basic purpose of the act was to *authorize* a public agency to give certain forms of monetary and advisory assistance to persons displaced from their dwellings by acquisition of the property for public use or by acquisition of adjoining property which lowers the value of the contiguous occupied property. This act, which is referred to as the Relocation Assistance Act, was amended in 1971 to make *mandatory* the previously optional advisory assistance and compensation for persons required to relocate. (See Gov. Code, §§ 7261, subd. (a), and 7262, as added by Stats. 1969, ch. 1489 and as amended by Stats. 1971, ch. 1574.) The pertinent mandatory provisions of the 1971 amendments carried an express delayed operative date of July 1, 1972; therefore a short period of time elapsed during which a public agency such as respondent was permitted, at its discretion, to follow the law either as it read prior to July 1, 1972, or after July 1, 1972. Such period of time was between March 4, 1972, the technical *effective* date of the amendments and July 1, 1972, their *operative* date. (See §§ 30-32, Stats. 1971, ch. 1574, p. 3164.)

Petitioner contends on appeal that the court erred in denying his petition because he was "displaced" after July 1, 1972, the operative date of the 1971 amendments. As amended, the act specifies that a public entity *shall* provide relocation assistance to a person displaced because of acquisition of real property for public purposes. (Gov. Code, §§ 7261,

subd. (a); 7262.) A "displaced person" is defined as one who moves from real property as a result of its acquisition, or as a result of a written order from a public entity to vacate, for public use. (Gov. Code, § 7260, subd. (c).)

It is clear from the record that the property was acquired for eventual public use, to wit, park and recreation purposes. The question raised by petitioner's contention is whether or not the mandatory relocation assistance provisions apply to petitioner, who resided on property, the title to which was obtained by the district before July 1, 1972, but from which he was not removed until after this date. Petitioner argues that he was a "displaced person" because he was given a three-day notice to vacate on July 28, 1972, and left the premises on August 9, 1972, both after the operative date of the statute in question. Respondent argues that since it acquired title to the property on April 25, 1972, the act does not apply, due to the fact that a "public entity" is defined therein as a public agency "when acquiring real property."[1] (Gov. Code, § 7260, subd. (a).) Respondent further argues that (a) petitioner ceased to be a tenant of the private owner of the dwelling on April 25, 1972, when the district bought the property; (b) petitioner was advised of his new landlord orally before May 12, 1972, and also by letter on that date; (c) on that date petitioner was given a notice of termination of tenancy effective August 1, 1972; (d) however, petitioner was not removed or did not move from the premises as a result of this notice of termination; (e) the notice of termination was never enforced, and petitioner left because he was three months in arrears on rental payments to the district and was evicted by a formal three-day notice to either pay rent or quit the premises. Respondent also claims that irrespective of whether or not petitioner vacated the premises as a result of the notice of termination or as a result of the notice to pay rent or quit the premises for nonpayment of rent, he is not eligible for mandatory benefits because he was a tenant of respondent district, not of a private party, and was first asked to quit the premises by his landlord (the district) on May 12, 1972, with the usual landlord's notice of termination of tenancy. The trial court's judgment was in part based on findings and conclusions that petitioner was in fact and law a tenant of the district before July 1, 1972. These findings and conclusions are supported by the evidence referred to hereinabove.

It is not necessary for us to decide, for the purposes of this case, whether or not the respondent district is a "public entity" as defined in

---

[1]This definition was also in the original 1969 act, so is not peculiar only to the 1971 amendments.

the act. (See Gov. Code, § 7260, subd. (a).) The trial court found as a finding of fact that it was not, at the time in question, because "it has not acquired real property, or any interest therein, for public use since July 1, 1972."[2] We may assume, *arguendo,* without so deciding that the trial court erred on this finding, and that the definition of "public entity" included respondent. We may also similarly assume that, because respondent was a public entity at the time involved in this matter, it should have adopted a set of rules and regulations under Government Code section 7267.8, subdivision (a), of the 1971 legislation. The trial court found as a fact that it had not adopted such regulations and concluded that it need not do so until it acquired real property for public use after July 1, 1972. The correctness of the finding of fact is conceded, but petitioner contends the conclusion of law was erroneous. We may further assume, for purposes of argument only, that the trial court erred as to this conclusion of law.

The trial court found as a fact that through his attorney petitioner made an oral demand for relocation benefits, that the oral demand was made on respondent and its attorney and was denied with the suggestion that a written claim be filed against respondent, and that no written claim was ever filed. These findings are supported by the record. The court also found that petitioner did not ever request respondent to review its determination on his eligibility as contemplated by Government Code section 7266.[3] This finding too is supported by the record.

Having found that petitioner failed to exhaust his statutory administrative remedies before filing in the courts, the trial court concluded that the petition for writ of mandamus should be denied. This conclusion is sound and disposes of this appeal. An examination of the amended petition for writ of mandate shows it to be clearly a "claim for money" and thus within the mandatory requirements of formal filing with the district as a prerequisite to any court proceedings as provided by

[2]The parties argue this point by reading the phrase "when acquiring real property" in different ways in the definition of "public entity" and by engaging in esoteric arguments as to the possible meanings of the word "when." Respondent asserts it means a date or period of time; petitioner insists it means a circumstance or set of circumstances.

[3]Government Code section 7266, as it read from 1969 until February 28, 1974, provided as follows: "Any person aggrieved by a determination as to eligibility for a payment authorized by this chapter, or the amount of a payment, may have his application reviewed by the public entity, and the decision of the public entity shall be final."

Effective February 28, 1974, the above provision was repealed and a section with the same number was adopted which also provides for review of eligibility but in a more comprehensive manner, not here significant.

statute. Petitioner specifically sought in his petition, inter alia, moving expenses and future housing payments. He prayed for an order commanding the district to pay such expenses and future housing payments and also for "prejudgment interest on the amount of monetary relocation benefits due . . . ."

We agree with the trial court and hold that petitioner has failed to exhaust the administrative remedies which are a prerequisite or condition precedent to intervention by a court of law on petitioner's behalf, whether it be through the medium of the filing of a complaint for money or a petition for a writ with the award of money as an ultimate goal. (See 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 181, pp. 1045-1046.) Contrary to petitioner's assertion, there was no lack of administrative remedy available. Government Code section 7266 provided such a remedy, in combination with Government Code section 905 et seq., as found by the trial court.[4]

■ In addition, having been advised that respondent had acquired title to the property and that he could if he so desired remain as a tenant of respondent, petitioner chose to become a tenant at an agreed monthly rental. Thereafter, having failed to pay the rent and having been given a three-day notice to either pay the delinquent rent or quit the premises, he elected the latter course. He thereby forfeited his status as a "displaced person" (Gov. Code, §§ 7261, subd. (a); 7262). His removal from the property was not the result of "acquisition," or a "written order from a public entity to vacate the real property for public use" (Gov. Code, § 7260, subd. (c)), but the result of his breach of a landlord-tenant agreement.

The judgment is affirmed.

Paras, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 26, 1976.

---

[4]Government Code section 905 et seq. relate to the filing of all claims for money or damages with all local governmental entities with exceptions not here applicable. Government Code section 7266 relates to filing of an application with local governmental entities as to certain types of claims, for money and other assistance, in connection with certain entities acquiring real property for a public use, and pertains to the *procedure* for review of an adverse decision of the agency acquiring property which has aggrieved the applicant. The two statutes, general and specific, are not in conflict and must therefore be harmonized and applied together. (See 2A Sutherland, Statut Construction (4th ed. 1973) § 51.05, p. 315; 45 Cal.Jur.2d, § 121, pp. 629-630.)