[Civ. No. 15710. Third Dist. Oct. 6, 1978.]

ERDMAN CAVANAUGH et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Lois K. Meltzer, Roger Warren and John Gant for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Iver E. Skjeie, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Defendants and Respondents.

**OPINION**

**EVANS, J.**—Plaintiffs, Erdman Cavanaugh, Maggie Von Stohl, Melborne Von Stohl, and Ruth Hauck,[1] appeal from a judgment of dismissal entered after an order was made sustaining defendant's demurrer to plaintiffs' first amended complaint without leave to amend.

Plaintiffs are tenants in housing located within the Capitol Redevelopment Plan Area of Sacramento, owned by the defendant, State of California. Except for Vella Turner, all plaintiffs commenced their tenancies after the acquisition of the property by the state.

After defendant had determined to demolish the structures and gave plaintiffs written notice to vacate, a class action was instituted seeking (1)

---

[1]Plaintiff, Vella Turner, was determined to be a preacquisition tenant in the property, and summary judgment in her favor was granted. She is not participating in any element of the appeal presented.

an interpretation of Government Code section 7260, subdivision (c),[2] that postacquisition tenants are displaced persons within the meaning of that section and are entitled to relocation benefits as provided in Government Code section 7262; and (2) to compel the defendant, State of California, to conduct a survey in the nature of an environmental impact report on the availability of replacement housing, and to compel the state to place and maintain the structures in a habitable condition.

By demurrer, defendant asserted that the first amended complaint failed to allege facts sufficient to constitute a cause of action in that the suit was improperly brought as a class proceeding, and that the postacquisition tenants are not entitled to relocation benefits as displaced persons. Those questions are again presented by the plaintiffs' appeal.

I

To achieve a resolution of the controversy presented, we first determine whether the appealing plaintiffs, as postacquisition tenants in properties acquired by the state for public use, are to be considered displaced persons, as defined in Government Code section 7260, subdivision (c) (fn. 2, this page), entitled to relocation benefits as provided in Government Code section 7262.[3]

In undertaking an analysis and interpretation of the statutory provisions, we initially employ one of several rules of statutory construction, that where a statute is susceptible of different constructions, the one that leads to the more reasonable result will be followed. (*Metropolitan Water Dist.* v. *Adams* (1948) 32 Cal.2d 620, 630 [197 P.2d 543].)

We perceive in section 7262 an expression of legislative intent that relocation benefits be extended to those persons displaced as a result of the acquisition who are either preacquisition tenants or postacquisition tenants who entered their tenancy without knowledge of the acquisition.

---

[2]Government Code section 7260, subdivision (c), in pertinent part provides, " 'Displaced person' means any person who moves from real property, or who moves his personal property from real property, as a result of the acquisition of such real property, in whole or in part, by a public entity . . . or as the result of a written order from a public entity to vacate the real property, for public use. This definition shall be construed so that persons displaced as a result of public action receive relocation benefits in cases where they are displaced as a result of an . . . acquisition . . . in connection with a public use . . . ."

[3]Unless otherwise indicated, all statutory references shall be to the Government Code.

Subdivision (a) (1) of that section states in part, "As a part of the cost of acquisition . . . a public entity shall compensate a displaced person for his: [¶] (1) Actual and reasonable expense in moving himself, . . ." A postacquisition tenant with knowledge is obviously not within the purview of the sections, as knowledge of the prior acquisition would inevitably affect the amount of rent bargained for, that is, in the marketplace the fair rental value will be discounted because of the lack of permanence and the probability that the tenant will incur further future moving costs. Our conclusion that section 7262 was intended to apply to postacquisition tenants without knowledge of the prior acquisition by the state is buttressed by and is consonant with legislative specification of other dislocation benefits limited to preacquisition tenants; it is compelled by examination of the entire system of law of which section 7262 is a part and by harmonizing each part with the others. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640 [335 P.2d 672]; *Stafford* v. *L. A. etc. Retirement Board* (1954) 42 Cal.2d 795 [270 P.2d 12].) Section 7264 provides for additional relocation payments to tenant renters of a dwelling in an amount not to exceed $4,000 and is intended to enable "displaced persons" to lease or rent suitable housing for up to four years. To be eligible for that additional benefit a "displaced person" must have been in occupancy 90 days prior to the initiation of negotiation by the public entity for acquisition of the property. Postacquisition tenants are expressly and specifically excluded from participation in those relocation benefits. In like fashion, section 7263 provides for additional payments to a displaced dwelling owner or occupant. In that instance the displaced dwelling owner is entitled to receive an amount not in excess of $15,000 provided the owner actually owned and occupied the premises for not less than 180 days prior to the initiation of negotiation for the acquisition of the property. Again, the Legislature specifically expressed its intent to exclude from participation in these relocation benefits any postacquisition owner or occupant. We conclude that had the Legislature intended these relocation benefits (§ 7262) to apply to preacquisition tenants only, it would have placed that limitation in the statute as it did in sections 7263 and 7264.

Creation of judicial exceptions to statutes is frowned upon except as they may be necessary to avoid an absurd result.

Under the present circumstances, we will not limit by judicial decree the application of relocation benefits to preacquisition tenants only, especially when the Legislature did not see fit to do so. (*Stockton Theatres, Inc.* v. *Palermo* (1956) 47 Cal.2d 469, 476 [304 P.2d 7].)

## II

Plaintiffs contend in a separate cause of action that the state must continue to maintain the structures in habitable condition and to also conduct a survey in the nature of an environmental impact report on the impact of the contemplated project upon housing stock in the area.

██ Plaintiffs argue that the requirement of "relocation advisory service assistance by the public entity" specified in section 7261 is analogous to an environmental impact report as required by the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21050 et seq.). By their brief they argue, "Just as the environmental impact report is designed to determine the net *environmental* impact of a public project, the 'adequate assurances' requirement is designed to analyze the net impact of a public program on a community's housing stock." (Italics in original.) Plaintiffs obviously misconstrue the express language utilized in section 7261. That section is directed specifically to persons, not projects. Section 7261 is not couched in equivocal terms; it directs that the public entity provide advisory assistance *to persons displaced* because of the public acquisition of real property. The advisory assistance required includes, (1) a determination of the need, if any, for relocation assistance; (2) supplying current and continuing information on the availability and prices of comparable, decent, safe, and sanitary housing for such displaced persons; (3) assurance that within a reasonable period of time prior to displacement there will be available, in areas not generally less desirable and at rents or prices within the financial means of the displaced persons, decent and safe dwellings; and (4) to furnish information concerning federal and state housing programs, loan programs, or other assistance available to the displaced person, and any other advisory services designed to minimize hardships to those forced from their habitat by reason of the acquisition of the property by the public entity. It is not to be inferred from the unequivocal language of that statute that the public entity must go further than expressly required and determine postacquisition whether carrying out a public project will have a negative public impact on the available housing stock within the community.

██ We also reject plaintiffs' contention that defendant is required to maintain the buildings in habitable condition. Where, as here, tenancies are being terminated in order to demolish the buildings to carry out the purpose intended at the time of acquisition, there is no obligation to redeem the implied warranty of habitability. The complaint fairly implies that the public use contemplated immediate demolition. Under such

circumstances, there can be no requirement that the defendant, prior to demolition or termination of tenancy, place the dwelling structures in habitable condition. As to cause of action number two, the demurrer was properly sustained *without leave to amend.*

## III

Code of Civil Procedure section 382 establishes the statutory authority for class actions. ■ Although the section appears to speak in the alternative, it is now judicially established that two requirements must be established as a predicate for the proceeding; (1) there must be an ascertainable class, and (2) there must be a well-defined community of interest in the questions of law and fact affecting the parties to be represented. However, it is not essential to the establishment of a class action that a common fund exist or a common recovery be required in order to establish the community of interest (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732]), and the fact that separate transactions may be involved does not preclude a finding of the requisite community of interest so long as each member of the class would not be required to litigate numerous or substantial questions to determine the individual's right to recover after rendition of a class judgment in plaintiffs' favor. (*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 809 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].)

In this instance the ascertainable class is the most important ingredient to be determined, and the determining factor is the community of interest among the class members in the mixed questions of law and fact. (*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at p. 706.) If the rights of each alleged member of the class are not dependent upon the facts applicable only to him, the requisite ascertainable class required for a representative suit will have been established.

■ The present complaint, although inartfully drawn, sufficiently discloses the essential elements to support the class suit as to counts one, relocation advisory assistance, and three, relocation expenses. The complaint seeks relocation advisory assistance and recovery of money· and expenses, on behalf of each plaintiff and a class of persons with status as tenants in residential units owned by the State of California in the Capitol Plan Area. The class is limited and easily ascertainable, and reveals a readily identifiable community of interest. The amount to be recovered may require separate groups as to those who do not elect to recover under section 7262, subdivision (b). However, proof of expense in

those cases proceeding under 7262, subdivision (a), will be easily computed after liability is established. The class proceeding in this instance will foster and accomplish the substantial judicial economy.

Contrary to the assertion of defendant, the decision in *Bozaich* v. *State of California* (1973) 32 Cal.App.3d 688 [108 Cal.Rptr. 392] is not here apposite. Footnote three in that decision at page 695 reveals the asserted class to be broad and diverse in interest. It included commercial as well as residential tenants. The community was not as homogeneous as here or compatible with the scheme of class proceedings as described by Code of Civil Procedure section 382 and as defined by the California Supreme Court in *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695, *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, and *Collins* v. *Rocha* (1972) 7 Cal.3d 232 [102 Cal.Rptr. 1, 497 P.2d 225].

The judgment dismissing cause of action two is affirmed. The judgment of dismissal as to causes of action one and three is reversed.

Reynoso, J., concurred.

**PUGLIA, P. J.**—I concur in the result.

The plaintiffs below appeal from a judgment dismissing their complaint after the state's demurrer was sustained without leave to amend. Plaintiff's complaint seeks to recover certain benefits provided under the Government Code (§§ 7260-7274) to owners and occupants displaced from real property acquired by a public entity for public use. Plaintiffs are all tenants of state-owned apartment dwelling units; their tenancies commenced after the state had acquired the property for public use; several years later the state gave to each plaintiff written notice to quit because the buildings in which they lived were scheduled for demolition.

Government Code section 7260 defines "displaced persons" as "any person who moves from real property, or who moves his personal property from real property, as a result of the acquisition of such real property, in whole or in part, by a public entity . . . or as the result of a written order from a public entity to vacate the real property, for public use."

Tenants removed from property acquired for public use fall into several factually distinct categories. There are those whose tenancies

commenced before public agency acquisition of the property or the onset of negotiations for acquisition; there are those whose tenancies commenced after negotiations or acquisition and who had notice thereof; finally there are the postnegotiation or acquisition tenants who did not have notice thereof. The definition of "displaced persons" in section 7260 does not on its face distinguish among these categories. Interpreted literally and liberally and in isolation from the statute of which it is a part, its plain meaning would appear to embrace all such classes of tenants without discrimination as to when the tenancy commenced or, if postacquisition, whether or not the tenant had notice.

While it is clear that all the plaintiffs became tenants after the state acquired the property for a public use, the complaint does not allege whether the plaintiffs had notice of that fact at the time they became tenants. This is a critical omission because, as I interpret the statute of which section 7260 is a part, postacquisition tenants with notice are not entitled to moving expenses and relocation assistance. In fact such tenants receive equivalent compensation in the form of a reduction in rent occasioned by the knowledge of both parties to the bargain that the tenancy is necessarily interim, subject to the preexisting plan of the landlord to commit the property to the public use for which it was acquired. Thus the postacquisition tenant with knowledge in a very real sense recovers the prospective costs of moving and relocation in the form of discounted rent; I do not believe the Legislature intended that he also receive a windfall in the form of the statutory benefits to which a "displaced person" is entitled.

The plaintiffs assert here, however, that when they entered upon their tenancies they did not have notice that the apartment buildings they occupy had been acquired for public use. Accordingly, they should be permitted to amend their complaint so to allege, thus adequately pleading that they are displaced persons within the meaning of section 7260.

Displaced persons are entitled to relocation advisory assistance (§ 7261) and to moving expenses (§ 7262). Plaintiffs seek these benefits in their first and third causes of action respectively. As to those two causes of action, the judgment of dismissal must be reversed and plaintiffs permitted to amend their complaint to allege lack of notice.

In their briefs the parties engage in wide-ranging argumentation on the nature, character and scope of the relocation advisory assistance to which

displaced persons are entitled under section 7261. Plaintiffs claim that the obligation of the public agency is akin to that imposed where an environmental impact report is required and envisages a comprehensive survey and analysis of community housing resources. The defendant would assign a much more modest role to the public agency in providing relocation advisory assistance to displaced persons. Indeed, defendant attempts to demonstrate that certain assistance already rendered to the plaintiffs by the state constitutes full compliance with its obligations under section 7261.

These discursions of the parties are wide of the mark. In sustaining the demurrer, the trial court decided only that the complaint did not state a cause of action because the statute under which plaintiffs claimed (Gov. Code, §§ 7260-7274) did "not apply to persons who may become tenants of the public agency, or a subtenant thereof after the date of acquisition." We hold that the trial court's interpretation of this statute was erroneous as a matter of law and that plaintiffs should be permitted to amend their complaint. Thereafter plaintiffs will be put to their proof and will be entitled to benefits and assistance as provided by statute if they sustain their burden. The demurrer to the first cause of action in which relocation advisory assistance is sought was predicated primarily on the argument that the complaint on its face revealed plaintiffs were not displaced persons under section 7260. The trial court, erroneously, agreed with the defendant. The resolution of this appeal does not require that we decide the precise scope and meaning of section 7261. It is enough to say as we do that plaintiffs must be allowed to amend to allege entitlement to the benefits provided thereunder.

The substantive basis of plaintiffs' second cause of action, alleging a breach of the warranty of habitability and seeking to compel defendant to maintain and repair the premises occupied by plaintiffs in accordance with the state housing law, does not arise under the statute providing moving expenses and relocation assistance. Thus the trial court's sole expressed basis for sustaining the demurrer—that plaintiffs do not allege they are displaced persons within the statute—does not relate to or affect the second cause of action. Nonetheless the demurrer was sustained to the entire complaint resulting in a judgment of dismissal of the action.

In my view the demurrer to the second cause of action should have been sustained without leave to amend. Considered together with all that was properly before the trial court, the complaint fairly implies that the public use for which the property was acquired contemplated imminent

demolition of the buildings thereon following their vacation by plaintiffs. Under those circumstances, the defendant has no obligation to redeem the warranty of habitability as a precondition to destruction of the buildings.

I agree with the opinion of the court that the judgment of dismissal should be affirmed as to the second cause of action and reversed as to the first and third causes of action with directions to permit plaintiffs to amend their complaint.