[Civ. No. 55936. Second Dist., Div. Two. Dec. 17, 1979.]

**DOROTHY ALBRIGHT et al., Plaintiffs and Appellants, v. THE STATE OF CALIFORNIA et al., Defendants and Appellants.**

COUNSEL

Fadem, Berger & Norton and Michael M. Berger for Plaintiffs and Appellants.

George Deukmejian, Attorney General, Richard D. Martland and L. Stephen Porter, Assistant Attorneys General, and Henry G. Ullerich, Deputy Attorney General, for Defendants and Appellants.

OPINION

**BEACH, J.**—This is an appeal from a judgment of the Superior Court of Los Angeles County granting in part and denying in part a peremptory writ of mandate. Defendant Department of General Services

(hereafter the Department) appeals from the judgment granting the petition of the writ while plaintiffs (hereafter petitioners) cross-appeal from the denial of the petition.

FACTS:

In February 1973 the state acquired property at Topanga Beach through condemnation proceedings. Prior thereto, the land in question was owned in fee by the Los Angeles Athletic Club. Starting in the early 1900's and continuing through early 1973, the club leased numerous parcels of the land to individuals who built houses thereon. The leases continued through early 1973.

After acquiring the Topanga Beach property in February 1973, the state started providing relocation assistance to those homeowners who were moving out. Those who refused to move were issued termination notices in October 1973. In November 1973, the lessees filed suit in superior court to enjoin the state from evicting them. A temporary restraining order was issued but was dissolved in December 1973. In April 1975 the superior court enjoined all evictions because of the state's failure to comply with the Environmental Quality Act requirements. That injunction was dissolved on appeal by this court in May 1976. (*Topanga Beach Renters Assn.* v. *Department of General Services* (1976) 58 Cal.App.3d 188 [129 Cal.Rptr. 739].) Meanwhile, in June 1975 the Department's Relocation Housing Appeals Board issued its decision against petitioners on certain issues of eligibility and increased benefits under the relocation act.

In December 1975 petitioners filed a petition for a writ of mandate and a complaint for declaratory relief against the state. Following the superior court's judgment, the Department appealed and petitioners cross-appealed.

The issues on appeal primarily involve interpretation of certain portions of the Government Code relating to relocation assistance.

DISCUSSION:

1. *Are petitioners displaced dwelling owners?*

The Department contends that the superior court erred in ruling that petitioners who owned homes on land they were leasing were entitled to

relocation benefits under Government Code section 7263.[1] That section requires the state to pay replacement housing benefits in an amount not to exceed $15,000 "to the owner of real property acquired for public use which is improved with a dwelling actually owned and occupied by the owner for not less than 180 days prior to the initiation of negotiation for the acquisition of such property." The Department claims that under section 7263 petitioners would be entitled to the benefits of section 7263 only if they were the owners of both the land and the dwellings. Here, though petitioners owned their dwellings, they did not own the land. Thus, the Department argues, petitioners were entitled only to relocation benefits under section 7264. That section provides for a payment of up to $4,000 to a displaced renter who has "actually and lawfully occupied" the dwelling "for not less than 90 days prior to the initiation of negotiation by the public entity for the acquisition of such property."

We note that under the Department's own guidelines certain replacement housing benefits of up to $15,000 are payable to a "displaced owner-occupant of a dwelling...." (Cal. Admin. Code, tit. 2, § 1874.01.) There is no requirement whatsoever that the dwelling owner also own the underlying land. While this administrative construction of Government Code section 7263 is not necessarily controlling, it is "'entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized.'" (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 647 [335 P.2d 672]; *Union Oil Co.* v. *State Bd. of Equal.* (1963) 60 Cal.2d 441, 456, fn. 8 [34 Cal.Rptr. 872, 386 P.2d 496].) In our view, the Department's rule not only was authorized under Government Code section 7267.8,[2] but also was a proper interpretation of section 7263.

Petitioners, who had 15-year leases on the land upon which they had built their dwellings, exercised rights and duties consistent with those of owners in fee. They made substantial improvements to the property. Many took out substantial loans on their dwellings to finance these improvements. They also formed a mutual water company, initially for the purpose of providing water to each of the lots but later also for providing such services as maintaining fencing and streets, and patrolling the

---

[1] All further statutory references are to the Government Code.

[2] This section requires the Department to "adopt rules and regulations to implement payments and to administer relocation assistance under the provisions of this chapter...."

beach area. Each of the lessees owned one share of the water company, with the lessor, the Los Angeles Athletic Club, also owning one share. ■ Under these circumstances, it would be unreasonable to classify petitioners, who had substantial property rights, as mere renters under section 7264, as the Department did. To qualify under that section, a person need only occupy the dwelling he is renting for 90 days immediately preceding the initiation of negotiation with the state for the acquisition of such property.

The Department nevertheless argues that even under its rule 1874.01, which we have discussed earlier, petitioners still would not qualify as dwelling owners because section 1870, subdivision (v) of title 2 of the California Administrative Code defines a dwelling owner as one who: "(1) Holds fee title, a life estate, a ninety-nine year lease, or a lease with not less than 50 years to run from date of acquisition of the property for the project...." Under the Department's current guidelines, however, a dwelling owner is defined as a person who: "(1) Holds fee title, a life estate, a fifty (50) year lease, or a lease with not less than twenty (20) years to run from date of acquisition of the property for the project...." Anyway, whether the rule requires a 99-year lease or a 50-year lease is irrelevant to the issue at bench since the rule involved concerns only the lease of a *dwelling*. In the case before us, it is conceded that petitioners owned the dwelling. The Department's rule would have significance only if the issue involved here was whether petitioners because of long-term leases on the dwellings could qualify as owners of the dwellings.

We hold that the Department's classification as renters under section 7264, rather than dwelling owners under section 7263, was a prejudicial abuse of discretion.

2. *Denial of relocation benefits to petitioner Bernstein.*

Petitioner Sidney Bernstein owned both a home at Topanga Beach and a home in Pacific Palisades. Petitioner had owned the Topanga Beach home since 1957. The Department denied petitioner replacement housing benefits on the theory that anyone whose property is acquired by the state but who owns another home is not a "displaced person" within the meaning of the relocation act.

Section 7260 defines a "displaced person" as one "who moves from real property, or who moves his personal property from real property, as

a result of the acquisition of such real property, in whole or in part, *by a public entity....*" ■ In our view, petitioner was just as surely displaced from his Topanga Beach home by the state's acquisition of that property as if he possessed no other home. There is no evidence that petitioner did not treat his Topanga Beach property as a home. In fact, the Department conceded in the superior court that petitioner "spends considerable time" at his Topanga Beach home.

*Seeherman* v. *Lynn* (M.D.Pa. 1975) 404 F.Supp. 1318, upon which the Department relies, is factually distinguishable. That case involved an almost-completed home. Unlike the situation at bench, in *Seeherman* there never was any occupancy by the plaintiffs.

As a displaced dwelling owner, petitioner would be entitled under section 7263 to relocation assistance in acquiring a comparable replacement dwelling. We agree with the trial court that in denying petitioner Bernstein relocation assistance on the ground that petitioner was not a displaced person, the Department abused its discretion and prejudicially affected petitioner's substantial rights. (See *Ledesma* v. *Urban Renewal Agcy. of City of Edinburg* (S.D.Tex. 1977) 432 F.Supp. 564, which held that homeowners, who did not physically occupy their home in Edinburg for the required 180 days immediately preceding initiation of negotiations to acquire it and who were renting another house hundreds of miles away in another town because of economic necessity but who returned to their Edinburg home for weekend visits and extended stays in summer, were entitled to replacement housing benefits.)

### 3. *Petitioners' status as tenants.*

The question presented is whether those petitioners who entered into short-term leases with the state upon the latter's acquisition of petitioners' property could be considered displaced persons upon termination of those leases. In *Cavanaugh* v. *State of California* (1978) 85 Cal.App.3d 354 [149 Cal.Rptr. 453], cited by the Department, the court stated that relocation benefits were to be extended "to those persons displaced as a result of the acquisition who are either preacquisition tenants or post-acquisition tenants who entered their tenancy without knowledge of the acquisition." (*Id.* at p. 357.) Here, petitioners are preacquisition tenants, and the Department is not contending otherwise. *Baiza* v. *Southgate Recreation & Park Dist.* (1976) 59 Cal.App.3d 669 [130 Cal.Rptr. 836], also cited by the Department, is distinguishable from the instant situation. In *Baiza*, the tenant failed

to pay the public entity the required rent and was given a three-day notice to either pay the delinquent rent or to quit the premises. The tenant chose to leave. Thus, in *Baiza* the tenant forfeited his status as a "displaced person" as a result of his breach of a landlord-tenant agreement. (*Id.* at p. 674.) The Department does not claim such a breach here.

■ We disagree with the Department's assertion that, following the state's acquisition of the property, petitioners by virtue of entering into short-term leases with the state forfeited all eligibility for relocation payments upon termination of the leases. To accept this argument would mean that those individuals who are required to move because of a public entity's acquisition of their property would be ineligible for relocation benefits simply because they continued to rent from the public entity in the interim. "We cannot ascribe such an intent to the Legislature." (*Superior Strut & Hanger Co. v. Port of Oakland* (1977) 72 Cal.App.3d 987, 996 [140 Cal.Rptr. 515].)

4. *Retroactivity of relocation provisions involved.*

On cross-appeal, petitioners claim that the trial court erred in not granting relief to those petitioners who moved from their dwellings prior to July 1, 1972, the effective date of the relocation assistance provisions involved here.

Prior to July 1, 1972, relocation assistance payments were within the discretion of the public body. (*Superior Strutt & Hanger Co. v. Port of Oakland, supra,* 72 Cal.App.3d 987, 998; *Parking Authority v. Nocovich,* (1973) 32 Cal.App.3d 420, 425 [108 Cal.Rptr. 137].) Effective July 1, 1972, such mandatory relocation assistance became mandatory; it has, however, been held not to apply retroactively. (*Superior Strut, supra,* at pp. 998-999; *Parking Authority v. Nicovich, supra,* at p. 425.) Hence, it is the moving date of the displaced person which determines his eligibility under the mandatory relocation assistance provisions. (*Superior Strut, supra,* at p. 999.) ■ We conclude that those petitioners who moved prior to July 1, 1972, the effective date of the provisions in question, are not eligible for mandatory relocation assistance. (*Ibid.*)

5. *Tenants in common.*

It is claimed by petitioners on cross-appeal that as to those displaced dwelling owners who were tenants in common each was entitled to full

relocation benefits rather than the one payment to a "family," which the Department determined the tenants in common were collectively entitled to.

Under the Department's rules, a family is defined as "two or more individuals, one of whom is the head of a household, plus all other individuals regardless of blood or legal ties who live with and are considered a part of the family unit. Where two or more individuals occupy the same family dwelling with no identifiable head of a household, they shall be treated as one family for replacement housing payment purposes." (Cal. Admin. Code, tit. 2, § 1870.) Petitioners argue that these administrative guidelines are improper because the relocation act makes no reference to families and requires merely that the dwelling owner be displaced. Thus, petitioners claim, since each tenant in common was a displaced dwelling owner as the result of the state's acquisition of the property, each was entitled to the full benefits under the relocation act. In deciding this issue, the superior court had this to say: "The statute simply provides for compensation to an 'owner' or 'displaced person.' Limitless possibilities of occupancy exist, including conventional 'singles' or married couples with or without minor and/or adult children; 'tenants in common' of the same or opposite sexes, with or without minor or adult children; combinations and/or variations of the above. This Court simply cannot find that the effort of respondent to bring some order of the statutes by using the 'head of household' concept was unreasonable. The regulations do not constitute an abuse of discretion." ■ Under the circumstances, we cannot say that the trial court was erroneous in its ruling.

### 6. *Denial of certain business relocation benefits to those petitioners who were renting out their dwellings.*

Section 7262, subdivision (c) provides that in lieu of actual and reasonable moving expenses, a displaced person who moves or discontinues his business is entitled to a fixed relocation payment of at least $2,500, but not more than $10,000, based on "the average annual net earnings of the business." This was interpreted by the Department as a requirement, among others, that the business contribute "materially" to the income of the displaced owner. (Cal. Admin. Code, tit. 2, § 1873.03 subd. (e).) The Department adopted this standard "as a means of measuring whether an activity was truly a business activity of the owner." The Department emphasizes that this is but one of various factors it takes into consideration in determining the existence of a business for

the purpose of section 7262, subdivision (c). As the Department stated: "[This rule] was particularly appropriate to the alleged business in the Topanga Beach case, where [petitioners'] business consisted of renting rooms. . . . The facts justify the observation that the owners of the residences located themselves on the beach because of the desirable qualities of living at that location. The rental. . . occurred not so much by reason of the owner desiring to be in the business of renting rooms or apartments, but to [*sic*] the fact that the location lent itself to a convenient method of decreasing the costs to the owner of residing at the location." ■ We agree with the trial court that when applied to these facts it cannot be said that the Department's requirement that the business contribute "materially" to the income of the displaced person was an unreasonable abuse of discretion.

The judgment is affirmed. Petitioners, cross-appellants Albright et al. shall recover all of their costs including their costs upon the cross-appeal.

Fleming, Acting P. J., and Compton, J., concurred.

Petitions for a rehearing were denied January 10, 1980, and the petitions of all parties for a hearing by the Supreme Court were denied February 14, 1980. Manuel, J., did not participate therein.